WINTER, Circuit Judge:
Physicians Healthsource appeals from Judge Underhill’s dismissal of its class action complaint asserting violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227 (the TCPA). The complaint alleges that appel-lees (collectively “Boehringer”) sent an unsolicited fax invitation for a free dinner meeting to discuss ailments relating to ap-pellees’ business. According to appellant, this fax constituted an “unsolicited advertisement” prohibited by the TCPA.
Judge Underhill dismissed appellant’s complaint for failure to state a claim— holding that no facts were pled that plausibly showed that the fax had a commercial purpose. While we agree that a fax must have a commercial purpose to be an “unsolicited advertisement,” we hold that the district court improperly dismissed appellant’s complaint. Where it is alleged that a firm sent an unsolicited fax promoting a free event discussing a subject related to the firm’s business, the complaint is sufficient to state a claim.
We therefore vacate and remand.
BACKGROUND
In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal of a complaint, we accept all factual allegations as true, drawing all reasonable inferences in the plaintiffs favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).
The complaint alleges that, on April 6, 2010, Boehringer, a pharmaceutical company, sent an unsolicited fax to appellant, inviting one of appellant’s doctors to a free “dinner meeting” and discussion entitled, “It’s time to Talk: Recognizing Female Sexual Dysfunction (FSD) and Diagnosing Hypoactive Sexual Desire Disorder (HSDD).” J. App’x at 24. The “invitation” stated that
Boehringer Ingelheim Pharmaceuticals, Inc. cordially invites you to join us for a dinner meeting entitled, It’s Time to Talk: Recognizing Female Sexual Dysfunction and Diagnosing Hypoactive Sexual Desire Disorder. Based on recent data from a large US study (PRESIDE), 43% of US women aged > 18 years have experienced a sexual problem in their lives and 9.5% of the same group of women have experienced decreased sexual desire with distress. This program has been developed to discuss Female Sexual Dysfunction (FSD), including Hypoactive Sexual Desire Disorder (HSDD) including pathophysiology models, epidemiology, and diagnosis. We hope you will join us for this informative and stimulating program.
Id. The fax provided registration details and revealed that the speaker at the dinner meeting would be David Portman, MD.
On March 30, 2014, appellant filed a class action lawsuit on behalf of more than forty individuals against Boehringer, alleging that the fax violated the TCPA as an “unsolicited advertisement” without a proper opt-out notice. Id. at 11. According *94 to the complaint, the fax was an “unsolicited advertisement” because it “promote[d] the services and goods of [Boehringer].” Id. Appellant sought an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled. Appellant also requested injunctive relief to enjoin Boeh-ringer from sending similar faxes in the future.
Boehringer moved to dismiss, arguing that appellant failed to state a claim under the TCPA because the unsolicited fax was not an advertisement. In its motion to dismiss, Boehringer asked the district court to take judicial notice of public records of the Food and Drug Administration (FDA) — a request that was unopposed and that the court granted. These records showed that, at the time it faxed appellant, Boehringer had submitted for approval by the FDA to market a drug named Fli-banserin. The drug was intended to treat HSDD. Because Flibanserin had yet to be approved by the FDA, Boehringer was forbidden to promote it. See 21 C.F.R. § 312.7(a) (prohibiting, inter alia, pharmaceutical companies from “promoting” drugs not yet approved by the FDA).
The district court dismissed the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc., No. 3:14-CV-405 (SRU), 2015 WL 144728, at *6 (D. Conn. Jan. 12, 2015). The court interpreted Federal Communications Commission (FCC) regulations as “requiring] plaintiffs to show that [an unsolicited] fax has a commercial pretext” for it to violate the TCPA. Id. at *3. The court determined that “[n]othing in the [f]ax indicates that the dinner was a pretext for pitching a Boehringer product or service.” Id. at *5. The court noted that, “[e]ven drawing the inference that Boeh-ringer sponsored the dinner in order to inform potential future prescribers of Fli-banserin about the existence and nature of HSDD, the hypothetical future economic benefit that the Boehringer defendants might receive someday does not transform the [f]ax into an advertisement.” Id.
DISCUSSION
As noted, we review de novo a district court’s dismissal of a complaint pursuant to Rule 12(b)(6). See Chambers, 282 F.3d at 152. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as' true, to “state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As the Supreme Court has stated,
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a “probability requirement,” but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are “merely consistent with” a defendant’s liability, it “stops short of the line between possibility and plausibility of ‘entitlement to relief.’ ”
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955).
Under the TCPA, it is unlawful for “any person within the United States” to send a fax that is an “unsolicited advertisement” — unless, inter alia, the fax has an opt-out notice meeting certain requirements. 47 U.S.C. § 227(b)(1)(C). The Act creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive *95 relief against future violations. 47 U.S.C. § 227(b)(3).
The parties do not dispute that Boeh-ringer’s fax lacked any opt-out notice, and the question is, therefore, whether it was an “unsolicited advertisement.” The Act defines “unsolicited advertisement” as “any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person’s prior express invitation or permission, in writing or otherwise.” 47 U.S.C. § 227(a)(5). Exercising its delegated rulemaking authority over the TCPA pursuant to 47 U.S.C. § 227(b)(2), the FCC has promulgated a rule elaborating on the Act’s definition of “unsolicited advertisement.” Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (the “2006 Rule”). The 2006 Rule states, in relevant part, that
facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA’s definition. In many instances, “free” seminars serve as a pretext to advertise commercial products and services. Similarly, “free” publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the “quality of any property, goods, or services.” Therefore, facsimile communications regarding such free goods and services, if not purely “transactional,” would require the sender to obtain the recipient’s permission beforehand, in the absence of an [established business relationship].
Id. The Rule itself comports with the statutory language, which defines offending advertisements as those promoting “the commercial availability or quality of [the firm’s] property, goods, or services.” 47 U.S.C. § 227(a)(5).
The district court interpreted the Rule as “requiring] plaintiffs to show that the fax has a commercial pretext — i.e., ‘that the defendant advertised, or planned to advertise, its products or services at the seminar.’” Physicians Healthsource, 2015 WL 144728, at *3 (quoting Bais Yaakov of Spring Valley v. Richmond, the Am. Int’l Univ. in London, Inc., No. 13-CV-4564 (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014)). We do not disagree. But, at the pleading stage, where it is alleged that a firm sent an unsolicited fax promoting a free seminar discussing a subject that relates to the firm’s products or services, there is a plausible conclusion that the fax had the commercial purpose of promoting those products or services. Businesses are always eager to promote their wares and usually do not fund presentations for no business purpose. The defendant can rebut such an inference by showing that it did not or would not advertise its products or services at the seminar, but only after discovery. This interpretation comports with the 2006 Rule. “In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue.” Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002). The 2006 Rule states that “it is reasonable to presume that such messages [advertising free seminars] describe the ‘quality of any property, goods, or services,’ ” potentially violating the TCPA. 2006 Rule, 71 Fed. Reg. at 25973 (quoting 47 U.S.C. § 227(a)(3)).
*96 Of course, as other courts have ruled,[1] not every unsolicited fax promoting a free seminar satisfies the Rule. There must be a commercial nexus to a firm’s business, i.e., its property, products, or services; that, in our view, is satisfied at the pleading stage where facts are alleged that the subject of the free seminar relates to that business. The Rule does not aim at faxes promoting free seminars per se,[2] but states only that, “[i]n many instances, ‘free’ seminars serve as a pretext to advertise commercial products and services.” 2006 Rule, 71 Fed. Reg. at 25978 (“Messages that promote goods and services even at no cost, such as ... free ... seminars, are unsolicited advertisements under the TCPA’s definition.”). In a different but relevant context, the Rule states that “a trade organization’s newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter’s primary purpose is informational, rather than to promote commercial products.” Id.
Requiring plaintiffs to plead specific facts alleging that specific products or services would be, or were, promoted at the free seminar would impede the purposes of the TCPA. See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013) (“Because the TCPA is a remedial statute, it should be construed to benefit consumers.”); Physicians Healthsource, Inc. v. Alma Lasers, Inc., No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (“Congress enacted the TCPA to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements.”) (citing H.R. Rep. No. 102-317, at 10 (1991); S. Rep. No. 102-78, at 2, 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972 (“[Ujnsolicited calls placed to fax machines, and cellular or paging telephone numbers often impose a cost on the called party (fax messages require the called party to pay for the paper used ...)”)). And — unless plaintiffs actually attended the free seminar — in many cases it will be difficult for plaintiffs to know whether it was in fact used to advertise a defendant’s products or services. See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (“The Twombly plausibility standard, which applies to all civil actions ... does not prevent a plaintiff *97 from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.”) (internal quotation marks omitted).
Two fanciful examples illustrate the distinction. If a complaint alleged that the Handy Widget Company funded a professorship at a local law school in the name of its deceased founder and faxed invitations on its letterhead to an inaugural lecture entitled “The Relevance of Greek Philosophers to Deconstructionism,” the complaint would not state a claim under the TCPA because the Handy Widget Company is not in the business of philosophical musings. In contrast, if the Handy Widget Company faxed invitations to a free seminar on increasing widgets’ usefulness and productivity, a claim under the TCPA would be validly alleged. Of course, the Handy Widget Company could rebut at the summary judgment stage with evidence showing that it did not feature its products or services at the seminar.
Boehringer’s fax advertised a “dinner meeting” to discuss two-medical conditions — Female Sexual Dysfunction (FSD) and Hypoactive Sexual Desire Disorder .(HSDD) — and their “pathophysiology models, epidemiology, and diagnosis.” J. App’x at 24. As a pharmaceutical company, Boeh-ringer was generally in the. business of treating diseases and medical conditions, such as FSD and HSDD. Moreover, the fax makes clear to the invitee that the dinner meeting was “sponsored by Boeh-ringer Ingelheim Pharmaceuticals, Inc.” Id. The fax invitation was sent to a doctor, whom Boehringer would presumably hope to persuade to prescribe its drugs to patients. Therefore, facts were alleged that Boehringer’s fax advertised a free seminar relating to its business.
In addition, Boehringer’s seeking approval from the FDA for the marketing of Flibanserin is relevant, although not dis-positive. Although not approved, the drug is intended as a remedy for the ailments to be discussed at the event. To be sure, Boehringer was prohibited from, inter alia, “promoting” an unapproved drug, 21 C.F.R. § 312.7(a), but that prohibition is not necessarily inconsistent with the free dinner’s mentioning the possible future availability of the drug. Nothing in the statute or Rule limits their scope to the advertisement of products or services then available.
In defense, Boehringer can present, inter alia, testimony of the dinner meeting participants as well as provide the meeting’s agenda, transcript, presentation slides, speaker list, or any internal emails or correspondences discussing the meeting. See Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F.Supp.3d 482, 492 (W.D. Mich. 2015) (holding that “the TCPA’s text does not require a court to put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement” and allowing parties to present evidence beyond the four corners of the fax — such as presentation slides — to determine if a fax promoting a free seminar was pretextual). It is also possible that Boehringer used the seminar to advertise other drugs or services in its inventory— which would certainly support finding a violation of the TCPA.
CONCLUSION
For the foregoing reasons, we vacate and remand for further proceedings consistent with this opinion.

. See Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F.Supp.3d 482, 489 (W.D. Mich. 2015); Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc., No. 13-CV-4564 (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014) ("While the [2006 Rule], could be read to categorize all faxes promoting free seminars as unsolicited advertisements, many courts require plaintiffs to show that the defendant advertised, or planned to advertise, its products or services at the seminar.”); Addison Automatics, Inc. v. RTC Group, Inc., No. 12 C 9869, 2013 WL 3771423, at *2 (N.D. Ill. July 16, 2013) ("[FJaxes promoting free seminars may be unsolicited advertisements because free seminars are often a pretext to market products or services.”) (internal quotation marks omitted); St. Louis Heart Center, Inc. v. Forest Pharms., Inc., No. 4:12-CV-02224, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013); Phillip Long Dang, D.C., P.C. v. XLHealth Corp., No. 1:09-CV-1076-RWS, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) (“[T]he Court does not read the FCC Promulgation as creating a per se ban on free seminar communications.”).

. Appellant relies on another provision of the 2006 Rule — that "applications and materials regarding educational opportunities and conferences sent to persons who are not yet participating or enrolled in such programs are unsolicited advertisements,” 2006 Rule, 71 Fed. Reg. at 25973 — to support its argument that faxes promoting free seminars are per se violations of the TCPA. We are unconvinced. The cited provision targets pretextual materials that promote, for example, enrollment at particular educational institutions; it does not purport to create a per se rule of the sort appellant advances. See 2006 Rule, 71 Fed. Reg. at 25974.