NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2119
_____

ROBERT W. MAUTHE, M.D., P.C., INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Appellant

v.

NATIONAL IMAGING ASSOCIATES, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-17-cv-01916)
Honorable Lawrence F. Stengel, District Judge
_____

Argued March 8, 2019

BEFORE:  AMBRO, RESTREPO, and GREENBERG, Circuit Judges

(Filed: April 17, 2019)
_____

Phillip A. Bock (argued)
Daniel J. Cohen
David M. Oppenheim
Bock Hatch Lewis & Oppenheim
134 North La Salle Street
Suite 1000
Chicago, IL 60602

Richard E. Shenkan
Shenkan Injury Lawyers LLC
6550 Lakeshore Street
West Bloomfield, MI 48323

   Attorneys for Appellant

Michael E. Baughman (argued)
Pepper Hamilton
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

Eric S. Merin
777 South 20th Street
Philadelphia, PA 19146

   Attorneys for Appellee

_____

OPINION*
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

This matter comes on before this Court on the appeal of plaintiff Robert W. Mauthe M.D. P.C., challenging the District Court's dismissal under Fed. R. Civ. P. 12(b)(6) of his class-action complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), entered on April 25, 2018. Although plaintiff is a professional corporation, we refer to it as though it is Robert W. Mauthe as an individual. Mauthe alleged that he and other class members received an unsolicited advertisement via fax

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

from defendant National Imaging Associates, Inc. sent in violation of the TCPA. For the reasons stated below, we will affirm the Court's order of dismissal.

## II. FACTUAL BACKGROUND

We recite only those facts that are relevant to this opinion which we take from Mauthe's complaint. On September 23, 2014, Mauthe received a satisfaction survey relating to the quality of its services, via fax, from defendant. Mauthe alleges that he did not have an established business relationship with defendant, implying that he did not know why defendant sent the survey to him. Mauthe charges that the fax was an unsolicited advertisement that defendant sent to him in violation of the TCPA because it contained defendant's name, promoted the quality of its services, and referred its recipient to a website to which he could send his responses to the questions in the survey. Mauthe also alleges that the fax was "a pretext to increase awareness and use of Defendant's healthcare management services and to increase traffic to Defendant['s] website, www.RadMD.com[.]" J.A. 18. Mauthe alleges that at least 39 other similarly-situated persons or entities received the fax, and he sought to advance a class-action claim against defendant, for "each person or entity that was sent one or more telephone facsimile messages ('faxes') about healthcare services available through www.RadMD.com." J.A. 20.

3

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Geness v. Cox, 902 F.3d 344, 353 (3d Cir. 2018). In determining whether plaintiffs sufficiently state a claim to survive a motion to dismiss filed under Rule 12(b)(6), "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. However, we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878-79 (3d Cir. 2018) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)).

## IV. DISCUSSION

Under the TCPA it is "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(c). The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or

4

quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." Id. § 227(a)(5). "'Advertising' is the action of drawing the public's attention to something to promote its sale." Florence Edocrine Clinic, PLLC v. Arriva Med., LLC, 858 F.3d 1362, 1366 (11th Cir. 2017) (internal quotations and citations omitted). "So to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc., 788 F.3d 218, 222 (6th Cir. 2015).[1]

Though an advertisement need not be as explicit as "buy this product from us," at a minimum for the sending of the fax to violate the TCPA it must directly or indirectly inform the recipient that the sender or some other entity sells something of value. See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 819 (8th Cir. 2015) ("Because the messages did not mention property, goods, or services, we agree that they were not advertisements prohibited by the TCPA or its implementing regulations.") Moreover, the fax either must (1) notify a potential buyer that he or she can purchase a product, goods, or services from the sending entity or perhaps another seller, see Sandusky, 788 F.3d at 222 (finding that faxes were not advertisements, even though they call attention to items and services, because "no record evidence shows that they do so because the drugs or [] services are for sale [], now or in the future"), or (2) induce or direct a willing buyer to seek further information through a phone number, an email address, a website, or equivalent method

---

[1] We are not concerned with a fax which the sender sends seeking to purchase something from its recipient.

for the purposes of making a purchase, see Holtzman v. Turza, 728 F.3d 682, 685-87 (7th Cir. 2013); Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918 (9th Cir. 2012). Thus, the fax must convey the impression to its recipient that a seller is trying to make a sale to him. We believe it is important to limit the TCPA to promotion of the sale of goods or services lest any unsolicited fax that a commercial entity sends that contains a phone number or website address conceivably could become an "unsolicited advertisement," a result that would be inconsistent with the statutory definition of that term.

It is not apparent from its content that the fax informed Mauthe that the defendant wanted to sell him something. The District Court held that it did not. Mauthe v. Nat'l Imaging Assocs. Inc., No. 17-1916, 2018 WL 1960945, at *2 (E.D. Pa. Apr. 25, 2018). Mauthe argues the Court's conclusion was erroneous because the Court ignored his allegation in the complaint that defendant sold healthcare management services. We fail to see how such allegation had any relevance on how the fax would be perceived by its recipients—a recipient's outside knowledge that a sender sells something does not transform every fax sent by such sender to a recipient with such knowledge into an advertisement. Given the discrepancy between what can be deduced from the fax itself and Mauthe's allegations, it was proper for the District Court to find that the fax did not offer to sell anything of value.[2]

---

[2] Although the complaint alleged that Mauthe did not have a prior business relationship with defendant, at oral argument he conceded that his prior interaction with defendant was likely what prompted defendant to send him the fax survey. However, we do not rely on that possibility in reaching our result in our review of the order granting the motion to dismiss, as that was not alleged.

6

Moreover, the fax did not tell Mauthe that he could purchase healthcare management services from defendant or direct him to a website for the purposes of making a purchase. Rather, the single website in the fax to which Mauthe points explicitly informed him that he should visit the website for the purpose of completing the satisfaction survey, not to make a purchase. J.A. 32 ("You may also complete the survey at www.RadMD.com."). Furthermore, the fax did not, contrary to Mauthe's allegations, contain information that would induce a potential buyer to visit the website. Although Mauthe argues that the fax promoted defendant's services as "easy to access," "effective," "convenient," "provider friendly," and "efficient," see appellant's br. 6-7, it did not claim that its services meet these standards. To the contrary, the fax asked if the recipient agreed with those descriptions of defendant's services, thus suggesting that the recipient already had used defendant's services. But asking a recipient in a survey whether a sender's services meet a standard is not the same thing as claiming the services meet that standard. Thus, under the statutory definition of advertisement, the use of the foregoing terms did not make the fax an advertisement.[3]

---

[3] We recognize that there may be another way in which an unsolicited fax may be construed as an advertisement, i.e., a sender may encourage the recipient to use an item or service more often, even if the recipient does not purchase such item or service at all, because the increased usage directly would benefit the sender by increasing sales. A classic example would be a fax encouraging doctors to prescribe a certain drug more often, even though patients not doctors normally purchase drugs. However, Mauthe did not allege such a third-party scenario. We also point out that while Mauthe explains his theory of liability in his reply brief, see appellant's reply br. 3-4, 8, we find no support for his explanation in the complaint. We need not "accept assertions in a brief without

Mauthe also contends that the fax was a pretext for commercial solicitation. See Fulton v. Enclarity, Inc., 907 F.3d 948, 954 (6th Cir. 2018) ("[T]he TCPA covers faxes that serve as 'pretext for a commercial solicitation.'")[4] To support this contention, Mauthe alleged that when he visited the website listed in the fax, he was subjected to numerous advertisements about defendant's services. J.A. 19. We fail to see how this circumstance established that the fax survey sent to him was a pretext for more advertising. By Mauthe's theory, any fax sent by defendant, for any purpose, as long as it contains defendant's website address, could become a "pretext" to more advertising. We will not adopt a standard under the TCPA which effectively would construe the inclusion of a website address in a fax as de facto advertising.

We want to make clear that we do not suggest that we endorse the pretext theory of liability under TCPA. We think that in almost all cases, a recipient of a fax could argue under the pretext theory that a fax from a commercial entity is an advertisement. The pretext theory, unless closely cabined, would extend TCPA's prohibition too far.

---

support in the pleadings. After all, a brief is not a pleading." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 232 (3d Cir. 2015).

[4] Mauthe's citations to Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc., 847 F.3d 92 (2d Cir. 2017), and Fulton v. Enclarity, 907 F.3d at 948, in his opening and reply briefs in support of his pretext assertions are inapropos, because in both cases, the pretext actions by the defendants were to create future opportunities to send more advertisements. 847 F.3d at 96; 907 F.3d at 955. This distinction is important because the pretext theory is predicated on the potential that a plaintiff may be harassed by even more advertising in the future. Here, there was no allegation that defendant intended to send Mauthe any future faxes, let alone any more advertisements.

But we need not explore the boundaries of pretext liability any further because Mauthe's claim could not survive the most expansive application of the pretext theory.[5]

We understand Mauthe's real theory behind his claim, that defendant may have intentionally sent this fax survey to dozens of recipients unsolicited as some sort of nonobvious promotion of its services. However, even though the complaint makes generalized class action allegations, it does not specifically identify a single recipient of the fax that Mauthe received without solicitation, by a recipient other than Mauthe. If the complaint had included explicit factual allegations of other identified individuals receiving this fax survey without solicitation that circumstance might have been material to our analysis here, but it did not make such explicit allegations. Thus, the theory of liability based on a nonobvious promotion of defendant's services through the sending of multiple faxes is a mere conclusory statement rather than a factual allegation. In fact, based on the factual allegations in the complaint, it was just as plausible that defendant sent the fax to Mauthe by mistake, and not because defendant was attempting to make a sale to him. Even construing the complaint in the light most favorable to Mauthe, his allegations did not raise his TCPA claim above the speculative level. Accordingly, we

---

[5] The pretext theory has its origin in a 2006 FCC rule, stating "any surveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules." Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006). It is unclear if we must follow the FCC's interpretation of the statute and adopt the pretext theory—in fact, in a different context the legal issue is currently before the Supreme Court in PDR Network, L.L.C. v. Carlton & Harris Chiropractic, Inc., No. 17-1705 (filed June 21, 2018).

find the District Court did not err in holding that the fax survey was not an advertisement, and we will affirm its April 25, 2018 dismissal order.[6]

---

[6] Mauthe also argues the District Court erred by finding that he had a prior relationship with defendant, despite his contrary allegation, and the Court's error colored its analysis. Because we affirm the Court's order even accepting Mauthe's allegation that he did not have a prior relationship with defendant as true, we need not address this argument.