20-589-cv
*Gorss Motels, Inc. v. Lands' End, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2020

Argued: December 9, 2020     Decided: May 13, 2021

Docket No. 20-589-cv

GORSS MOTELS, INC., individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

— v. —

LANDS' END, INC.,

*Defendant-Appellee.*[*]

B e f o r e:

CABRANES, LYNCH, AND CARNEY, *Circuit Judges.*

---

[*] The Clerk of the Court is respectfully directed to amend the caption as set forth above.

Plaintiff-Appellant Gorss Motels, Inc., filed a putative class action seeking compensation under the Telephone Consumer Protection Act ("TCPA") for faxes it received advertising the products of Defendant-Appellee Lands' End, Inc. The district court (Victor A. Bolden, *J.*) granted summary judgment to Lands' End, concluding that Gorss gave "prior express invitation or permission" to receive the faxes, an affirmative defense under the TCPA, through its franchise agreements with non-party Wyndham Hotel Group, for which Lands' End is an approved supplier. On appeal, Gorss argues that the district court erred in granting summary judgment, both because Gorss did not give permission to receive the fax advertisements and because any permission Gorss gave was to Wyndham and not Lands' End. We disagree.

First, although the parties do not raise the issue on appeal, we conclude that Gorss has standing to proceed under the TCPA. Second, we conclude that Gorss gave prior express permission to receive the faxes at issue through its franchise agreements with Wyndham. Finally, we reject Gorss's contention that any permission to send fax advertisements was given to Wyndham and not to Lands' End. We conclude that Gorss agreed to the process that occurred here, in which Wyndham sent Gorss fax advertisements on behalf of a Wyndham-approved supplier, Lands' End, advertising products that could be used in franchised motels. Accordingly, the judgment of the district court is AFFIRMED.

––––––––––

GLENN L. HARA, Anderson + Wanca, Rolling Meadows, IL, *for Plaintiff-Appellant.*

DANIEL P. TIGHE (Joshua N. Ruby, *on the brief*), Donnelly, Conroy & Gelhaar, LLP, Boston, MA, *for Defendant-Appellee.*

––––––––––

2

GERARD E. LYNCH, *Circuit Judge*:

The Telephone Consumer Protection Act ("TCPA") prohibits the sending of unsolicited fax advertisements. This appeal requires us to determine the contours of the TCPA's affirmative defense for fax advertisements that are sent with the recipient's "prior express invitation or permission." 47 U.S.C. § 227(a)(5). Plaintiff-Appellant Gorss Motels, Inc., complains of three faxes it received in 2015 and 2016. At the time, Gorss was operating a franchised Super 8 Motel, a brand owned by non-party Wyndham Hotel Group, and the advertisements were for products approved by Wyndham for use in Wyndham-branded hotels and sold by Defendant-Appellee Lands' End, Inc., a Wyndham-approved supplier.

Gorss filed a putative class action complaint against Lands' End under the TCPA, on behalf of itself and other Wyndham-branded motels that received the faxes. The district court (Victor A. Bolden, *J.*) granted Lands' End's motion for summary judgment, concluding that the faxes Gorss received were not unsolicited advertisements that could give rise to TCPA liability because Gorss had given "prior express invitation or permission" to receive them.

On appeal, Gorss argues that the district court erred in granting summary judgment to Lands' End and denying class certification, because it improperly

concluded that Gorss had given consent to receive fax advertisements through its franchise agreements with Wyndham. In the alternative, Gorss argues that even if it did give permission to receive fax advertisements, that permission extended only to Wyndham, and not to Lands' End. We disagree on both points.

We begin by addressing whether Gorss has standing, and conclude that it does. Proceeding to the merits, we further conclude that Gorss gave "prior express invitation or permission" to receive faxes from Wyndham and its affiliates offering products from Wyndham-approved suppliers such as Lands' End for use in franchised motels. Finally, we reject Gorss's contention that its permission did not extend to the faxes at issue here. We conclude that Gorss agreed to receive precisely the type of fax – ones offering products for use in its motel sold by Wyndham-approved suppliers – that it complains of here. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

### I.  Statutory Framework

As relevant here, the TCPA makes it illegal "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," except in certain limited situations. 47 U.S.C.

4

§ 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). The statute contains a safe harbor provision, permitting the sending of unsolicited advertisements where (1) the "advertisement is from a sender with an established business relationship with the recipient"; (2) "the sender obtained the number of the telephone facsimile machine through . . . the voluntary communication of such number, within the context of such established business relationship . . . or . . . a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution"; and (3) the "advertisement contains a[n] [opt-out] notice" meeting specific requirements laid out in the statute. *Id.* § 227(b)(1)(C)(i)-(iii).

The TCPA establishes a private right of action through which consumers can "recover for actual monetary loss from such a violation, or . . . receive $500 in damages for each" unsolicited fax. *Id.* § 227(b)(3)(B). Treble damages are authorized for willful or knowing violations. *Id.* § 227(b)(3). The Federal

5

Communications Commission ("FCC") has authority to prescribe regulations to implement the TCPA. *Id.* § 227(b)(2).

## II.     Factual Background

In 1988, Gorss Motels, a Connecticut corporation owned by Steven Gorss, entered into a franchise agreement with Super 8 Motels, a brand owned by Wyndham Hotel Group, to operate a Super 8-branded motel in Cromwell, Connecticut. As part of the original franchise agreement, Gorss "agree[d] to purchase from [Wyndham], or from such other vendor as [Wyndham] may approve from time to time" certain supplies and materials for the motel. J.A. 307. In 2009, Gorss and Super 8 amended the 1988 franchise agreement to extend its term to 2014.

On September 10, 2014, Gorss entered into a new franchise agreement (the "2014 Franchise Agreement") to operate the franchise for an additional twenty years. The 2014 Franchise Agreement, as in the earlier agreement, contained provisions regarding approved vendors and suppliers for the motel. Specifically, it provided:

> You will purchase or obtain certain items we designate
> as proprietary or that bear or depict the Marks, such as
> signage, only from suppliers we approve. You may

6

> purchase other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards. . . .We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

J.A. 309-10, quoting the 2014 Franchise Agreement at §§ 3.10, 4.4.

In connection with the 2014 Franchise Agreement, Gorss also received a Franchise Disclosure Document. The disclosure explained that a Wyndham affiliate, Worldwide Sourcing Solutions, Inc. ("WSSI"), would be offering "goods and services" sold by approved suppliers to franchisees and that "Wyndham would be paid a commission based on" purchases that the franchisees made from approved suppliers. J.A. 310-11. The disclosure further explained the approved supplier program as follows:

> To support the purchasing efforts of our franchisees we and/or WSSI negotiate purchasing terms, including price, volume discounts and commissions on a range of products and services. . . . In connection with this program, we and/or WSSI identify certain suppliers of products and services who are then designated as "Approved Suppliers." Under the Approved Supplier

7

> program, franchisees may purchase products and
> services directly from these Approved Suppliers
> through our electronic e-procurement system or
> through more traditional means.

J.A. 312.

Finally, as part of the renewal application process and in the 2014

Franchise Agreement, Gorss provided its fax number to Wyndham. That was not

the first time that Gorss gave Wyndham its fax number; Gorss "periodically

provided [its] fax number to Wyndham as part of the franchisor/franchisee

relationship," including in 2010, as part of the renewal process in 2014, and again

in 2015. J.A. 319-21. Throughout Gorss's relationship with Wyndham, Gorss

received thousands of pages of faxes advertising the products of Wyndham-

approved suppliers sent to the number it had provided to Wyndham. Gorss did

not indicate to Wyndham at any point that it wished to stop receiving these faxes.

On October 28, 2014, Defendant-Appellee Lands' End entered into an

agreement with WSSI. Lands' End was designated an approved supplier and

authorized to sell its products to Wyndham franchisees in exchange for a

commission to Wyndham. After the agreement was executed, Wyndham

recommended that Lands' End use its fax broadcasting service to advertise to

8

franchisees. Lands' End sent Wyndham a draft fax advertisement offering branded uniform apparel, which Wyndham edited to include a disclaimer. Although the disclaimer included a sentence stating that recipients could "opt out from future faxes," by calling or emailing Wyndham at the email address or telephone number provided, it did not contain any additional opt-out information. J.A. 327-28. Wyndham asked its third-party vendor, Western Printing, to send the fax to franchisees. Western Printing, in turn, subcontracted the sending of the Fax to another third party, WestFax, Inc. The Lands' End fax was sent to Gorss and other franchisees on January 12, 2015. Two additional Lands' End fax advertisements were sent to franchisees in the same manner on June 15, 2015, and May 16, 2016, respectively. The June 2015 fax did not contain the opt-out language included in the first fax; the May 2016 fax did.

On August 4, 2016, Gorss sold the Cromwell motel building to new owners, terminating the franchise agreement. Since the sale, Gorss has filed class action complaints against more than twenty Wyndham-approved suppliers, based on fax advertisements it received while it was operating a Wyndham-franchised motel.

## III.    Procedural Background

On January 4, 2017, Gorss filed a class action complaint against Lands' End in the District of Connecticut, based on the faxes advertising Lands' End products that it received in 2015.[1] The complaint pleaded claims under the TCPA and Connecticut's junk fax statute, Conn. Gen. Stat. § 52-570c. On April 5, 2019, after discovery, Gorss moved to certify a class. On June 26, 2019, Lands' End moved for summary judgment.

On January 16, 2020, the district court granted Lands' End's motion for summary judgment and denied as moot Gorss's motion for class certification. *Gorss Motels, Inc. v. Lands' End, Inc.*, No. 17-cv-10, 2020 WL 264784 (D. Conn. Jan. 16, 2020). The court began by addressing whether Gorss had alleged an injury sufficient to confer standing. Lands' End contended that Gorss was "collect[ing] the faxes with an eye towards litigation" and therefore would not have opted out of the faxes even if they did contain a TCPA-compliant opt-out notice. *Id.* at *8.[2]

---

[1]The 2016 fax was identified in discovery and was not included in the original complaint.

[2] It is undisputed that none of the faxes at issue contain a TCPA-compliant opt-out notice that would allow Lands' End to take advantage of the safe harbor in 47 U.S.C. § 227(b)(1)(C)(i)-(iii), even assuming Lands' End met the other requirements of the safe harbor provision.

Gorss argued that it had alleged a sufficient injury because it had received unsolicited fax advertisements, and that it was not required to attempt to opt out of the faxes before filing suit under the TCPA. The district court noted its disagreement with Lands' End's position, but declined to decide the issue of standing because, it concluded, the court had "the ability to resolve this case without addressing the issue of standing." *Id.*

On the merits, the district court concluded that the faxes Gorss received were not "unsolicited advertisements" within the meaning of the TCPA.[3] The court reasoned that Gorss's "list[ing] its fax number and agree[ing] to receive information from its franchisor's affiliates and approved vendors" in its 2014

---

[3] In its complaint, Gorss alleged that a compliant opt-out notice would be required even if the faxes did not meet the definition of an "unsolicited advertisement," based on an FCC regulation requiring opt-out notices even for advertisements sent with the express invitation or permission of the recipient. *See* J.A. 23-24; *Gorss Motels*, 2020 WL 264784 at *9, citing Rules and Regulations Implementing the TCPA; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25971-72 (FCC May 3, 2006) (formerly codified at 47 C.F.R. § 64.1200(a)(4)(iv)). As the district court observed, however, the D.C. Circuit subsequently invalidated that regulation. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017). Accordingly, the court concluded that the motion for summary judgment turned on whether the faxes Gorss received were "unsolicited advertisements" within the meaning of the TCPA. On appeal, Gorss does not argue that a solicited advertisement requires an opt-out notice, and we therefore need not address that question.

franchise agreement with Wyndham constituted "prior express invitation or permission" to receive fax advertisements for products of approved suppliers such as Lands' End. *Id.* at *11-12. Because the district court concluded that the faxes at issue were not unsolicited advertisements, it declined to reach Lands' End's argument that it was not the "sender" of the faxes within the meaning of the TCPA. Finally, having dismissed Gorss's TCPA claim, the court declined to exercise supplemental jurisdiction over its Connecticut law claim, and denied as moot its motion for class certification. This appeal followed.

## DISCUSSION

"We review a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in its favor." *Halo v. Yale Health Plan*, 819 F.3d 42, 47 (2d Cir. 2016) (internal quotation marks omitted). We review for abuse of discretion a district court's decision not to exercise supplemental jurisdiction over state law claims. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004).

Although the parties do not contest the issue, we consider first whether Gorss has standing, and conclude that it does. Turning next to the merits, Gorss

12

makes two primary arguments. First, Gorss argues that "prior express invitation or permission" to receive faxes under the TCPA requires that the receiver "affirmatively and explicitly" agree to receive advertisements, and separately agree that they be sent via fax, which, it contends, did not occur here. Appellant's Br. 27. Second, Gorss argues that even if it gave consent to receive fax advertisements from Wyndham, that consent would not extend to Lands' End, which, in its view, sent the faxes at issue.

We are unpersuaded. We conclude that Gorss gave "prior express invitation or permission" to receive fax advertisements from Wyndham and its affiliates through its agreements with Wyndham. We further conclude that the permission Gorss gave extends to the faxes in this case.

## I.     Gorss Has Standing to Sue.

When a district court "dismisses a case without deciding whether standing exists . . . th[is] Court has an obligation *sua sponte* to assure itself that the plaintiff[] ha[s] Article III standing before delving into the merits." *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 332-33 (2d Cir. 2009), *rev'd on other grounds*, 564 U.S. 410 (2011). Accordingly, we begin with the question of whether Gorss has standing to proceed.

13

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The injury in fact must be "both concrete and particularized." *Id.* at 1545 (internal quotation marks and emphasis omitted). Although "Congress is well positioned to identify intangible harms that meet minimum Article III requirements . . . standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

We have previously held that the "nuisance and privacy invasion" of receiving unsolicited text messages is a sufficient injury to allege standing under the TCPA. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 677 (2019). So too, we think, is the "nuisance and privacy invasion" of receiving unsolicited fax advertisements. Moreover, the "occupation of [a] [p]laintiff's fax machine," as well as use of its paper and ink, which occurred here, are "among the injuries intended to be prevented by" the TCPA. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015).

Lands' End argued below that Gorss lacks standing because the injuries it

14

alleges are not "fairly traceable" to the fax advertisements it received. Specifically, Lands' End contended that Gorss collected the faxes with an eye towards litigation and did not read them, and therefore it could not be injured by the absence of a TCPA compliant opt-out notice. Gorss disagreed, and contended that whether Lands' End could establish that it met the safe harbor requirements of 47 U.S.C. § 227(b)(1)(C)(i)-(iii) for unsolicited faxes did not bear on whether Gorss had standing to raise a TCPA claim. We agree with Gorss. The injuries caused by unwanted fax advertisements – nuisance and privacy invasion, occupation of the plaintiff's fax machine, and use of its materials – occur the moment the unwanted fax is received, regardless of whether the sender can establish a defense to liability under the TCPA. Because Gorss has alleged a sufficient injury in fact, fairly traceable to the fax advertisements it received and redressable by a favorable decision, we conclude that Gorss has standing to proceed.

## II.  Lands' End Did Not Violate the TCPA.

We turn next to the question of whether the district court erred in concluding that the faxes Gorss received were not unsolicited advertisements that would give rise to TCPA liability. The TCPA defines an "unsolicited

15

advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Accordingly, "prior express invitation or permission" is an affirmative defense to liability under the TCPA. *Cf. Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018), *as amended* (Jan. 9, 2018) (concluding that "[p]rior express consent is an affirmative defense to liability" under § 227(b)(1)(A)(iii) of the TCPA, which addresses text messages and calls made through automated telephone dialing systems).

Lands' End argues that the faxes at issue here were not "unsolicited advertisements" because Gorss gave "prior express invitation or permission" to receive them through its agreements with Wyndham. We agree.

"We begin with the text." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021). The TCPA requires "express permission," which is defined as "[p]ermission that is clearly and unmistakably granted by actions or words, oral or written." *Permission*, Black's Law Dictionary (11th ed. 2019). Moreover, "prior" permission requires that permission be given *before* the fax is sent. Taken together, the entire defense requires permission, given before the fax

16

advertisement is sent, "clearly and unmistakably grant[ing]" the sender permission to send it. That interpretation is consistent with the FCC's, which states that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14129 (2003).[4]

Here, it is clear that Gorss "underst[ood] that by providing a fax number," it was "agreeing to receive faxed advertisements" and "clearly and unmistakably grant[ing]" permission to receive those fax advertisements. In the 2014 Franchise Agreement, Gorss agreed that Wyndham was permitted to "offer optional assistance . . . with purchasing items used at or in" the motel. J.A. 309-10. Gorss similarly agreed that Wyndham's "affiliates" were permitted to "offer this service on [Wyndham's] behalf." *Id.* The Franchise Disclosure Document Gorss received

---

[4] We note that it is an open question whether we must defer to the FCC's orders interpreting the TCPA. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019) (declining to resolve whether a 2006 FCC Order interpreting the TCPA is equivalent to a legislative or an interpretive rule). We need not decide that question here, where we treat the FCC's interpretation as persuasive authority, providing further confirmation of our interpretation based on the text of the statute.

at the same time explained that a Wyndham affiliate, WSSI, would be offering "goods and services" sold by approved suppliers to franchisees. J.A. 310-11. With knowledge of these provisions, Gorss provided its fax number to Wyndham in its application to renew its franchise and in the 2014 Franchise Agreement. Moreover, Gorss "periodically provided [its] fax number to Wyndham as part of the franchisor/franchisee relationship," including in 2010, as part of the renewal process in 2014, and again in 2015. J.A. 319-20. Finally, prior to the 2014 renewal process, Gorss had received many similar faxes from Wyndham and its affiliates advertising the products of approved suppliers under the same WSSI program.[5]

Together, these facts lead inexorably to the conclusion that Gorss gave permission to receive faxes from Wyndham and its affiliates advertising the products of approved suppliers. Gorss agreed that Wyndham and its affiliates could "offer optional assistance . . . with purchasing items used at or in" the motel, and in the same agreement provided its fax number. J.A. 309-11. And Gorss knew, from having been a Wyndham franchisee before, that the "offer[s] of

---

[5] Indeed, prior to the renewal agreement, Gorss had already contacted its counsel in this case about the faxes.

18

optional assistance" typically came in the form of faxes. More is not required.[6]

Gorss argues that "merely . . . providing a fax number in the course of a business relationship" is not enough to establish permission. Appellant's Br. 22, 24. True enough. But here, Gorss did not "merely" provide a fax number in the course of its relationship with Wyndham. Instead, it agreed that Wyndham and its affiliates, and specifically WSSI, could "offer optional assistance . . . with purchasing items used at or in" the motel, including, for example, branded apparel sold by approved supplier Lands' End. Moreover, Gorss's prior experience as a Wyndham franchisee made clear that the "optional assistance . . . with purchasing" Gorss was agreeing to receive would take the form of fax advertisements. To be sure, mere provision of a fax number in the course of a business relationship is not sufficient to establish permission to receive faxed advertisements – but that is not all that occurred here.

---

[6] Citing this Court's decision in *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92 (2d Cir. 2017), Gorss argues that "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." Appellant's Br. 11. But in *Boehringer*, we were discussing what a plaintiff must *plead* to state a claim under the TCPA. 847 F.3d at 96. In that context, we reasonably concluded that a remedial statute should not place a heavy pleading burden on potential plaintiffs. *Id.* Here, the fact that the TCPA is a remedial statute cannot permit Gorss to escape from the permission it "clearly and unmistakably grant[ed]."

Our conclusion that Gorss gave sufficient permission to receive the faxes at issue is also guided by our previous interpretations of the TCPA. In *Latner v. Mount Sinai Health System, Inc.*, the plaintiff alleged that Mount Sinai Health System violated § 227 (b)(1)(A)(iii) of the TCPA, which prohibits sending text messages or placing calls to cell phones through automated telephone dialing systems without the "prior express consent" of the receiver, when it contracted with a third party service to send him text messages reminding him to get a flu vaccine. 879 F.3d at 53-54. We concluded that Mount Sinai was not liable under the TCPA. We explained that, "considering the facts of the situation" the text message "f[e]ll within the scope of [the plaintiff's] prior express consent" because he had provided his cell phone number and agreed that his information could be used "to recommend possible treatment alternatives or health-related benefits and services." *Id.* at 55 (internal quotation marks omitted).

The situation here is similar to that in *Latner*. The plaintiffs in both cases provided their contact information and indicated their agreement to receive certain information, *before* receiving the complained-of fax or text message. Gorss complains that the agreement he signed did not spell out that he was agreeing to receive information via fax (even though he provided his fax number in the

20

agreement), but the same is true in *Latner* regarding text messages. *Id.* at 53. And although *Latner* addressed a different portion of the TCPA, when Congress uses the same words in two different portions of the same statute, we presume that they have the same meaning in both. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006). We see no persuasive reason to believe that "prior express invitation or permission" in the provision governing fax advertisements demands a higher standard of consent than does "prior express consent" in the provision governing text messages or calls made through an automatic telephone dialing system. *Cf. Physicians Healthsource, Inc. v. Cephalon, Inc*, 954 F.3d 615, 622 (3d Cir. 2020) (concluding that "'[e]xpress consent' and 'express invitation and permission' are synonymous in the context of the TCPA"). It would be inconsistent with *Latner* to conclude that there was no statutorily sufficient permission here.

Our conclusion that Gorss gave "prior express invitation or permission" is further supported by decisions in the Third and Eleventh Circuits which have given "prior express invitation or permission" a similar construction in analogous cases. In *Physicians Healthsource, Inc. v. Cephalon, Inc.*, the Third Circuit concluded that a physician had given permission to receive fax advertisements

21

from a pharmaceutical company where he had met with representatives of that company and provided them with his business card, which included his fax number, and the representatives had asked him whether "they could follow up with him and send him things." 954 F.3d at 617 (internal quotation marks and alterations omitted). The court reasoned that "[p]rior express consent can be deduced from a message-recipient's voluntary provision or knowing release of his or her number to a message-sender, such that a message is solicited and thus not prohibited by the TCPA if the message relates to the reason the number was provided." *Id.* at 620 (internal quotation marks and alterations omitted).[7]

Similarly, in *Gorss Motels, Inc. v. Safemark Sys., LP*, Gorss, along with another franchised motel, alleged that another Wyndham-approved supplier violated the TCPA when it sent, and allowed WSSI to send on its behalf, faxes advertising its products. 931 F.3d 1094, 1097 (11th Cir. 2019). The court rejected that argument, concluding that through their franchise agreements, Gorss and its co-plaintiff "expressly agreed to receive information about purchasing items

---

[7] Judge Porter dissented, concluding that there was a genuine dispute of material fact as to whether the doctor had given the representatives his fax number, which precluded summary judgment, and that the majority improperly relied on an implied consent standard. *Id.* at 626-27.

22

from Wyndham affiliates, so they cannot complain that an affiliate sent them that kind of information." *Id.* at 1101.[8]

Gorss argues that these two out-of-circuit decisions, which it concedes support the district court's conclusion here, are incorrect, and that we should instead follow the Seventh Circuit's reasoning in *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, another recent decision addressing the meaning of "express invitation or permission" in the context of the TCPA. 950 F.3d 959 (2020). There, a pharmaceutical company sent a fax advertisement to more than 11,000 fax numbers it obtained by purchasing the customer database of another business. *Id.* at 962-63. The court concluded that in order to render a fax solicited, "the consumer must affirmatively and explicitly give the advertiser permission to send it fax advertisements on an ongoing basis." *Id.* at 966. It further concluded that the pharmaceutical company was liable, both because permission was not transferable from the original owner of the customer database to the defendant

---

[8] Lands' End argues, based on *Safemark* and another district court decision involving Gorss and denying liability, *Gorss Motels, Inc. v. Otis Elevator Co.*, 422 F. Supp. 3d 487, 501 (D. Conn. 2019), that we can also affirm the district court's judgment on the grounds that Gorss is collaterally estopped from arguing that it did not give "prior express permission or invitation" to receive faxes from Wyndham and its affiliates in its agreements with Wyndham. Because we affirm the district court's decision on the merits, we do not reach that issue.

who had purchased the database and because the customers had not affirmatively and explicitly given permission to the original owner to send fax advertisements. *Id.* at 967-68.

In urging us to follow *A-S Medication*, Gorss ignores that the Seventh Circuit was addressing a substantially different scenario. There, it was undisputed that the defendant "never sought or obtained permission from any of the recipients prior to sending the fax," *id.* at 963, and the issue was whether the prior owner of the customer database obtained permission, and whether that permission could be transferred to the defendant. But here, Lands' End argues that Gorss *did* give permission, through its agreements with Wyndham, to receive fax advertisements from Wyndham and its affiliates advertising the products of approved suppliers such as Lands' End. Moreover, even if we were to apply the test from *A-S Medication* here, as Gorss urges us to, and ask whether Gorss "affirmatively and explicitly g[a]ve [Wyndham and its affiliates] permission to send it fax advertisements on an ongoing basis," we are persuaded that the answer is yes. As described above, the agreements between Wyndham and Gorss clearly establish that Gorss agreed to receive fax advertisements from Wyndham and its affiliates. Accordingly, the facts of *A-S Medication* are quite distinct from

24

those here. In any event, to the extent that the Seventh Circuit's analysis of whether the original owner of the database obtained permission is inconsistent with our conclusions, we respectfully decline to follow it, finding the reasoning of the Third and Eleventh Circuits, and our own decision in *Latner*, more persuasive.

Finally, in the alternative, Gorss argues that any permission it gave to receive faxes from Wyndham and its affiliates would not extend to the faxes here, which Gorss contends were sent by Lands' End and not by Wyndham. Citing FCC regulations, Gorss argues that the sender of a fax advertisement is "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," and that the sender here is Lands' End, not Wyndham or its affiliates, the entities to which it ostensibly gave permission. Appellant's Br. 31, citing 47 C.F.R. § 64.1200(f)(10). We disagree.

Here, Lands' End entered into an agreement with WSSI, a Wyndham affiliate. Wyndham then proposed, pursuant to that agreement, that Lands' End advertise its products via fax to Wyndham franchisees. The fax advertisement was drafted by Lands' End, edited by Wyndham, sent by Wyndham to a third-

25

party contractor, Western Printing, for distribution, and sent in turn by Western Printing to WestFax, a subcontractor, which ultimately distributed the fax. Under those circumstances, the contention that Wyndham can be categorically determined not to have been the "sender" of the advertisements appears, at best, artificial. Even applying the FCC's interpretation, moreover, it seems clear that although Lands' End is the entity "whose goods or services are advertised or promoted" by the fax, Wyndham is the entity "on whose behalf" the fax was sent, given that it suggested the fax, edited the fax, sent the fax to the distributor, and would receive financial compensation if any products were sold. *See* J.A. 310-11 (explaining that "Wyndham would be paid a commission based on" purchases that the franchisees made from approved suppliers).[9]

More importantly, Gorss's argument about who ultimately sent the advertisements evades the real question here: Whether Gorss gave permission to receive the advertisements at issue. Gorss agreed that Wyndham was permitted to "offer optional assistance . . . with purchasing items used at or in" the motel, and that Wyndham's affiliates were permitted to "offer this service on

---

[9] We also note that the opt-out language included on the January 12, 2015 and May 16, 2016 faxes informed the receiver that they could opt-out of future faxes by emailing *Wyndham*, not Lands' End. *See* J.A. 301, 305.

[Wyndham's] behalf." J.A. 309-10. And the Franchise Disclosure Document Gorss received at the same time explained that WSSI would be offering "goods and services" sold by approved suppliers to franchisees. J.A. 310-11. In other words, the scheme that Gorss agreed to is exactly what unfolded here: Wyndham, through the agreement of its affiliate, WSSI, with Lands' End, "offer[ed] optional assistance . . . with purchasing items used at or in" the motel by offering "goods" sold by Lands' End, a Wyndham-approved supplier. J.A. 310.

Gorss attempts to rely on *A-S Medication* for the proposition that prior express permission "is not transfer[]able under the TCPA." Appellant's Br. 32, citing *A-S Medication*, 950 F.3d at 967. But in that case, the defendant sent faxes to numbers it obtained by purchasing the customer database of another business. The court there was merely pointing out that even if the defendant could show that the business selling the database had obtained prior express permission, that permission would not be transferable to the defendant. Assuming arguendo that we would adopt a similar rule, that scenario is a far cry from what occurred here, where Gorss agreed to receive faxed messages advertising the goods and services of approved suppliers such as Lands' End. Gorss cannot now complain about receiving advertisements of the very type it expressly agreed to receive.

27

## CONCLUSION

For the reasons stated above, we conclude that the district court did not err in granting summary judgment to Lands' End and dismissing Gorss's motion for class certification as moot. Moreover, because Gorss's federal claims were properly dismissed on summary judgment, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Gorss's state law claims. *See Motorola Credit Corp.*, 388 F.3d at 56 ("[A]s a general proposition . . . if all federal claims are dismissed before trial, the state claims should be dismissed as well.") (internal quotation marks and alterations omitted).

Accordingly, the judgment of the district court is **AFFIRMED**.

28