# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3791

_____

BPP

*Plaintiff - Appellant*

v.

CaremarkPCS Health, L.L.C., doing business as CVS Caremark; Welltok Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2022
Filed: November 16, 2022

_____

Before GRUENDER, MELLOY, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

BPP sued CaremarkPCS Health, L.L.C. and Welltok, Inc., alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The district

court[1] granted Caremark and Welltok's motion for summary judgment, and BPP appealed. We affirm.

## I.

BPP is a periodontal care provider in the St. Louis, Missouri area. Caremark is a pharmacy benefits manager ("PBM"). Caremark's clients are entities that sponsor group health plans, including insurers, third-party administrators, and employer sponsors. Caremark administers the pharmacy networks where policyholders may fill prescriptions, conducts eligibility review for benefits, and processes claims. Caremark does not sell prescription medications or services to healthcare providers or their patients.

In October 2019, Caremark implemented new opioid-coverage-limitation options that its health-plan-sponsor clients could institute. One of these options was a three-day supply limit for patients under the age of twenty. Caremark contracted with Welltok to send a fax announcing this supply-limitation option to more than 55,000 healthcare providers who had previously prescribed opioids to adolescent patients. BPP was one of the recipients of Caremark's fax.

The fax explained that "our clients have the option to apply a 3-day supply limit on opioids prescribed for patients who are: 19 or younger; [c]onsidered opioid naïve . . . and [b]eing prescribed short-acting opioids, including immediate release (IR) and immediate release combination opioid products." The fax also noted that "[o]pioid prescriptions for cancer, sickle cell disease or palliative care will be exempt from the 3-day supply limit" and that providers "can request prior authorization for patients whose clinical diagnosis may require a longer day supply for ongoing therapy." Caremark's marketing department reviewed a draft of the fax before it was sent to providers.

---

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

BPP sued Caremark and Welltok, alleging that Caremark's fax was an "unsolicited advertisement" in violation of the Telephone Consumer Protection Act. *See* 47 U.S.C. § 227(b)(1)(C). Caremark and Welltok moved for summary judgment, which the district court granted.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor. *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 930 (8th Cir. 2021). We affirm because there is no genuine dispute of material fact and Caremark and Welltok are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Lindeman v. St. Luke's Hosp. of Kan. City*, 899 F.3d 603, 605 (8th Cir. 2018).

The TCPA makes it unlawful to fax an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The TCPA does not bar the unsolicited sending of faxes that lack commercial components. *See Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 223 (6th Cir. 2015) ("[T]he Act unambiguously defines advertisements as having commercial components . . . ."); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967, 25,973 (May 3, 2006) ("[F]acsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules.").

BPP first argues that the district court incorrectly interpreted the TCPA's definition of an unsolicited advertisement. The district court applied the Sixth Circuit's interpretation in *Sandusky*: "[a]n advertisement is any material that

-3-

promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." 788 F.3d at 222. By contrast, BPP argues that to advertise means "to give public notice of" a commercial good or service. Accordingly, BPP contends that any fax that gives public notice of a commercial good or service is a prohibited unsolicited advertisement, regardless of whether it promotes a sale or whether the sender was motivated by profit. Because Caremark's fax gave notice of its PBM services, BPP argues that the fax was unlawful.

We disagree with BPP's proposed interpretation of unsolicited advertisement. The TCPA does not ban all faxes that contain information about commercial goods or services, as BPP would have it. Rather, it bans faxes that "advertis[e] the commercial availability or quality of any property, goods, or services." *See* 47 U.S.C. § 227(a)(5). The fax itself, and not just the underlying property, good, or service, must have a commercial component or nexus to constitute an unsolicited advertisement. We therefore agree with the Sixth Circuit that the TCPA "unambiguously defines advertisements as having commercial components" and that "to be an ad, the fax must promote goods or services to be bought or sold, and it should have profit as an aim." *Sandusky*, 788 F.3d at 222.

Next, BPP contends that the district court should have deferred to the Federal Communications Commission's ("FCC") interpretation of the term "unsolicited advertisement" under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). *See also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980-81 (2005) (noting the FCC's "authority to promulgate the binding legal rules" implementing the TCPA). BPP is incorrect. Under *Chevron*, courts are required to defer to an agency's interpretation only if the statutory term at issue is ambiguous. 467 U.S. at 843. As previously described, the term "unsolicited advertisement" in the TCPA is not ambiguous. *See* 47 U.S.C. § 227(a)(5); *Sandusky*, 788 F.3d at 222. Regardless, the FCC's guidance does not support BPP's interpretation of the statute. The FCC has explained that a fax is not an unsolicited

advertisement when its primary purpose is informational, rather than to promote commercial products. 71 Fed. Reg. at 25,973.

Lastly, BPP argues that even if we apply *Sandusky's* interpretation of unsolicited advertisement, there is still a genuine dispute as to whether Caremark intended the fax to promote the sale of its PBM services or prescription drugs. However, the language of the fax and the nature of Caremark's business demonstrate that the fax did not promote the sale of any goods or services. The fax simply informed healthcare providers that they had the option to impose a three-day limit on opioid prescriptions for certain patients. Moreover, Caremark sells its PBM services only to insurance-plan sponsors. It does not sell any goods or services to doctors or their patients. Therefore, Caremark could not have intended its fax to induce doctors to pay for some other unnamed products or services. *Cf. Physicians Healthsource, Inc., v. Boehringer Ingelheim Pharms., Inc*., 845 F.3d 92, 95-97 (2d Cir. 2017) (holding that a fax inviting physicians to a dinner that was free but included a pitch to buy the sender's products was an unsolicited advertisement).

Nevertheless, BPP claims that there is a genuine factual dispute here because Caremark may have intended its fax to cause providers to encourage their patients to switch to insurance providers that use Caremark as their PBM. According to BPP, this supposed business rationale, if found to exist, would indicate a sufficiently commercial nexus such that the fax would be unlawful under *Sandusky*'s interpretation of unsolicited advertisement. *See* 788 F.3d at 222. BPP contends that the involvement of Caremark's marketing department in drafting the fax supports its view. However, Caremark's marketing department reviews informational communications as well as commercial communications. Therefore, the involvement of the marketing department does not support an inference of commercial purpose, and BPP otherwise does not point to facts supporting its speculative theory.

Moreover, even if BPP could prove that Caremark's fax had some minor or remote commercial purpose, its claim would still fail. To consider a fax to be an

unlawful advertisement on the basis of a remote or minor commercial purpose would vastly broaden the TCPA's definition of unsolicited advertisement. Almost any fax could economically benefit the sender through branding, goodwill, or other indirect effects, regardless of whether that fax would be plainly understood as promoting a commercial good or service.

In sum, no reasonable jury could find that the fax was an "unsolicited advertisement" under the TCPA, and the district court's grant of summary judgment to Caremark and Welltok was proper.[2]

## III.

For the foregoing reasons, we affirm.

_____

---

[2]The parties also dispute whether Caremark's fax was exempt from the TCPA as a "transactional notice." *See* 71 Fed. Reg. at 25,972-25,973. Because we hold that Caremark's fax was not an unsolicited advertisement, we need not consider that issue.