In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 22-1304

AMBASSADOR ANIMAL HOSPITAL, LTD.,

*Plaintiff-Appellant,*

*v.*

ELANCO ANIMAL HEALTH INC.
and ELI LILLY & CO.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-cv-2886 — **Mary M. Rowland**, *Judge.*

_____

ARGUED OCTOBER 28, 2022 — DECIDED JULY 24, 2023

_____

Before SCUDDER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

KIRSCH, *Circuit Judge*. Ambassador Animal Hospital, Ltd., brought a putative class action suit against Elanco Animal Health Inc. and its parent company Eli Lilly & Co., alleging that Elanco sent Ambassador two unsolicited fax advertisements in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. The district court dismissed the amended

complaint for failure to state a claim, concluding that the faxes did not constitute unsolicited advertisements under the TCPA. We affirm, holding that the faxes do not indicate—directly or indirectly—to a reasonable recipient that Elanco was promoting or selling some good, service, or property as required by the TCPA.

I

Elanco Animal Health (an animal health products and services company) sent Ambassador Animal Hospital two unsolicited faxes inviting Ambassador's veterinarians and its owner to RSVP for two free dinner programs. The faxes listed the topics of the dinner programs—one titled "Canine and Feline Disease Prevention Hot Topics" and the other "Rethinking Management of Osteoarthritis"—and indicated that both programs had been approved for continuing education credits. The faxes also provided the names of the programs' presenters. The top left and bottom right corners of each invitation included the trademarked "Elanco" logo, and the bottom of each fax contained a notice encouraging recipients to consult their state or federal regulations or ethics laws about restrictions on accepting industry-provided educational and food items.

Ambassador filed suit in state court, alleging violations of the TCPA, 47 U.S.C. § 227 and state law. Ambassador argued that the two faxes were unsolicited advertisements under the TCPA because the free dinner programs were used to market or sell Elanco's animal health goods and services. Elanco removed the case to federal court and moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed the

TCPA claim with prejudice and relinquished jurisdiction over the state law claims under 28 U.S.C. § 1367(c).

II

We review Rule 12(b)(6) dismissals de novo, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 772 (7th Cir. 2021). We also review questions of statutory interpretation de novo. *Bernstein v. Bankert*, 733 F.3d 190, 199 (7th Cir. 2013).

With limited exceptions not relevant here, the TCPA prohibits sending unsolicited advertisements by fax without the recipient's consent. 47 U.S.C. § 227(a)(5), (b)(1)(C). The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(5).

The sole question in this case is whether the two faxes Elanco sent to Ambassador fall within this definition. Ambassador argues that they do because, although they mentioned no products or services, Elanco's goal was to advertise the commercial availability or quality of its goods or services. Relying on facts external to the faxes, Ambassador asserts that Elanco chose subjects for the seminars that overlapped with products it sold, offered free dinners and continuing education credits to encourage local veterinarians to attend, and assigned sales managers to receive RSVPs. In short, the free educational dinners were a ploy to advertise Elanco's products and services.

We start and end with the plain language of the statute. Section 227 asks whether the content of a fax advertises the commercial availability or quality of a thing. See *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366–67 (11th Cir. 2017). It does not inquire of the seller's motivation for sending the fax or the seller's subsequent actions. The absence of any reference to the sender's purpose in § 227 is particularly significant because the TCPA expressly considers a sender's purpose in other provisions. See, e.g., *id.* § 227(a)(4) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services"); *id.* § 227(b)(2)(B)(i) (authorizing the FCC to adopt an exemption for "calls that are not made for a commercial purpose"). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). Accordingly, to be an unsolicited advertisement under the TCPA, the fax itself must indicate—directly or indirectly—to a reasonable recipient that the sender is promoting or selling some good, service, or property. In other words, the "material … which is transmitted"—the faxed document—must perform the advertising. An unsolicited advertisement "does not depend on the subjective viewpoints of either the fax sender or recipient, and thus an objective standard governs whether a fax constitutes an unsolicited advertisement." *Robert W. Mauthe M.D., P.C. v. Millennium Health LLC*, 58 F.4th 93, 96 (3d Cir. 2023).

Ambassador argues that Elanco's faxes did, in fact, contain advertising content. Namely, Ambassador emphasizes that

Elanco included its name and logo on the faxes, the seminar topics related to products sold by Elanco, and the invitations targeted recipients and requested RSVPs of particular employees. But none of these features transformed Elanco's invitations to free dinners and continuing education programs into advertisements for a good, service, or property. Use of Elanco's trademarked logo on the invitations did not reasonably encourage readers to buy any of Elanco's products or services. Nor did simply mentioning subject matter related to Elanco's business. The TCPA does not go so far as to prohibit sending faxes on company letterhead to promote free education on topics that relate to the sender's business—it prohibits advertising products or services. And even if Elanco targeted veterinarians familiar with its products or directed RSVPs to individuals in the marketing or sales departments, Elanco's faxes did not contain the promotional quality necessary for an advertisement.

The faxes certainly promoted goodwill for Elanco and helped the company manage its brand and image. And there could be situations in which a similar fax message would qualify as an indirect advertisement—perhaps if Elanco had said something like "Join us for a free dinner discussion of how Alenza [Elanco's product] can help manage canine inflammation" or "RSVP for a free event hosted by Elanco on the best medication available for canine osteoarthritis." But not only did these faxes lack that promotional aspect, nothing in them directly or indirectly alluded to the commercial availability or the quality of Elanco's products, as the statutory definition requires.

Ambassador also argues that the invitations served as a pretext for unsolicited advertising and asks us to follow the

Federal Communications Commission's guidance on the statute. See *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787 (April 6, 2006) (hereinafter 2006 Order). The 2006 Order states that fax messages "that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *Id.* at 3814. According to the FCC, "[i]n many instances, 'free' seminars serve as a pretext to advertise commercial products and services." *Id.*

As a preliminary matter, we need not decide whether the pretext portion of the 2006 Order is interpretive guidance or a legislative rule. But see *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 263–64 (4th Cir. 2020) (concluding that the pretext portion of the 2006 Order is nonbinding interpretive guidance). Because we conclude that it conflicts with the statutory text, the pretext provision is not entitled to deference. See *Utility Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014).

The text of the TCPA creates an objective standard narrowly focused on the content of the faxed document. The FCC's interpretation, however, asks us not only to assume subjective motivations behind faxes that advertise no goods or services, but to assume that subsequent conduct of senders is relevant to the TCPA analysis. Moreover, the TCPA is limited to advertisements that promote "commercial" property, goods, and services. 47 U.S.C. § 227(a)(5). A bare offer for a free good or service is not an advertisement unless the fax also promotes something that the reader can acquire in exchange for consideration. See *Mauthe*, 58 F.4th at 96 ("Nowhere in the

fax is a discussion of anything that can be bought or sold—the fax speaks only about a *free* event."). We therefore decline to manufacture a pretext element unsupported by the TCPA's text.

AFFIRMED