**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-6334**

_____

RICKY VINCENT PENDLETON,

        Plaintiff – Appellant,

v.

BETSY C. JIVIDEN, Commissioner WV Division of Corrections and Rehabilitation; CLARENCE J. RIDER, Religious Service Director, WV Division of Corrections and Rehabilitation; DONNIE AMES, Mount Olive Correctional Complex and Jail,

        Defendants – Appellees.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, District Judge. (2:22-cv-00178)

_____

Argued:  January 23, 2024                      Decided:  March 20, 2024

_____

Before HEYTENS and BENJAMIN, Circuit Judges, and MOTZ, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, which Judge Benjamin and Judge Motz joined.

_____

**ARGUED:** Helen E. White, MUNGER, TOLLES & OLSON LLP, Washington, D.C., for Appellant. Spencer James Davenport, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellees. **ON BRIEF:** Samuel David Kinder Weiss, RIGHTS BEHIND BARS, Washington, D.C.; Ginger D. Anders, MUNGER, TOLLES & OLSON LLP, Washington, D.C., for Appellant. Patrick Morrisey,

Attorney General, Lindsay S. See, Solicitor General, Michael R. Williams, Principal Deputy Solicitor General, Jodi B. Tyler, Assistant Attorney General, OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL, Charleston, West Virginia, for Appellees.

TOBY HEYTENS, Circuit Judge:

An inmate in the West Virginia prison system brought statutory and constitutional claims stemming from the denial of his request for a prison to accommodate his religious dietary restrictions. Because the inmate's pro se complaint states a claim for relief, we vacate the district court's judgment and remand for further proceedings.

## I.

Ricky Pendleton follows the "Sufi Original Traditions" of Islam. His beliefs require a diet that "aids in the purification of the mind, body and the reparation of [the] mental/inner self" and does so while promoting "compassion and harmlessness to l[i]ving creatures." JA 40. Pendleton says, according to those beliefs, he can eat "vegetables, fruits and certain fish." *Id.*

In 2014, however, prison officials introduced a new diet program for those with religious dietary restrictions. Under that program, a single "religious special diet" is served—one designed to meet the needs of all faiths by following the rules of the most diet-restrictive ones. With all forms of meat off the table, the diet uses soy as its primary protein source.

The problem is that Pendleton's body has problems digesting soy. And—for reasons more fully explained below, see Part III(A)(1), *infra*—Pendleton's digestive issues are not simply a matter of medicine or comfort. They also are of "religious significance." JA 40.

Concluding he could eat neither the meat served as part of the regular diet nor the soy served as part of the religious special diet, Pendleton made several tries to secure a religiously appropriate and nutritionally complete diet. Pendleton sought a religious

3

accommodation. That request was denied. Later, Pendleton filed two grievances, asserting that he was "being coerce[d] and substantially pressured . . . to eat soy texturized protein which is forbidden in [his] way of life of Islam" and that this treatment violated his "First Amendment rights" and "discriminated against . . . [his] religious dietary tenet." JA 13, 64. As relief, Pendleton asked "[t]o be severed from" the religious diet program. JA 13. Those grievances were denied as well.

Using a form seemingly provided by the district court, Pendleton filed a pro se complaint against three prison officials. In the space provided on the form, Pendleton briefly summarized his allegations and asserted that the defendants' actions violated—as relevant here—"[his] first amendment rights to practice [his] sincerely held belief[s]." JA 9.[1] At the end of a section captioned "statement of claim," there is a handwritten note that reads: "See Attached Memorandum of Law in Support of 42 U.S.C. Section 1983; First Amendment Violation, the Establishment Clause; RLUIPA Violation." *Id.* Along with the form, Pendleton filed a typewritten document labeled "Memorandum of Law" and 53 pages of exhibits, including medical records, grievance forms, and an affidavit.

The defendants moved to dismiss, contending Pendleton failed to allege facts showing the religious diet program substantially burdened his religious practice. While the motion to dismiss was pending, Pendleton—still pro se—filed a motion asking again to be "severed" from the diet program.

In a single opinion, the district court resolved both motions in the defendants' favor.

---

[1] The form also asserted Equal Protection and Establishment Clause violations. The district court dismissed those claims, and Pendleton does not renew them on appeal.

4

The court dismissed Pendleton's complaint, concluding he had not adequately alleged he was being forced to consume any foods forbidden by his religion. The district court construed Pendleton's motion to be severed from the dietary program as a request for preliminary and permanent injunctive relief, and it denied that motion because its dismissal of Pendleton's claims meant he had "not sufficiently established a right to his requested injunctive relief." JA 108.

Having secured counsel, Pendleton appeals both the dismissal of his complaint and the denial of his motion to be severed from the diet program.

## II.

Before addressing whether Pendleton has stated a claim on which relief can be granted, we must resolve a dispute over what precisely we should be looking at in deciding that question. Federal Rule of Civil Procedure 8(a)(2) says: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The defendants appear to admit that the relevant "pleading" whose sufficiency we are assessing is not limited to the pre-printed complaint form but also includes the exhibits Pendleton filed with that form. But the defendants say it does not include the memorandum of law Pendleton filed at the same time—even though that memorandum is specifically referenced in Pendleton's "Statement of Claim." JA 9.

We disagree. Even when parties are represented by counsel, they may "incorporate[ ]" other documents "into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). And though Pendleton has a lawyer now, he was proceeding pro se when he filed this lawsuit. Pendleton is thus entitled to "a liberal

5

construction of the documents he deposited with the clerk," *Allen v. Atlas Box & Crating Co.*, 59 F.4th 145, 149 (4th Cir. 2023) (quotation marks removed), and we must not put too much weight on the "legal label[s]" he used, *Castro v. United States*, 540 U.S. 375, 381 (2003).

None of this is revolutionary. Indeed, courts routinely look beyond what pro se litigants identify as their "complaint" and analyze the substance of any included documents in considering a motion to dismiss for failure to state a claim. See, *e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 244 n.1 (4th Cir. 2017). We do the same here.

III.

With that, we turn to the merits. We review the district court's grant of a motion to dismiss for failure to state a claim de novo, applying the same standards as the district court. See, *e.g.*, *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022). We review the denial of both preliminary and permanent injunctive relief for abuse of discretion. See *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023) (preliminary injunction); *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (en banc) (permanent injunction). A ruling that rests on an error of law is necessarily an abuse of discretion. See, *e.g.*, *Jordan v. Large*, 27 F.4th 308, 311 (4th Cir. 2022). Applying those standards here, we vacate the district court's judgment and remand for further proceedings.

A.

The district court dismissed Pendleton's RLUIPA claim because it concluded he had not alleged "a substantial burden on the exercise of his religious beliefs." JA 91. We

6

disagree.

RLUIPA forbids any "person acting under color of State law" from "impos[ing] a substantial burden on" an incarcerated person's "religious exercise" "unless the [defendant] demonstrates that the imposition of the burden" "is in furtherance of a compelling government interest; and is the least restrictive means of furthering that" interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-5(4)(A)(iii).

"RLUIPA itself does not define 'substantial burden.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Lacking a statutory definition, this Court has understood the substantial burden requirement to be satisfied "when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (alterations and quotation marks removed). As relevant here, a government imposes a substantial burden on religious practice when it puts a person "between a rock and a hard place"—forcing them to choose between a government-provided benefit and their religious convictions. *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015).

Pendleton has plausibly alleged that he faces exactly that predicament. Start with the religious belief at issue. Pendleton alleges that, according to his religious beliefs, his diet must primarily "aid[] in the purification of the mind, body and the reparation of [the] mental/inner self" and do so while promoting "compassion and harmlessness to l[i]ving creatures." JA 40. For that reason, Pendleton may not eat the standard diet because those meals regularly include meat. But Pendleton claims his religious beliefs also prevent him from eating the only special religious diet on offer. Although Pendleton's religious beliefs

7

do not forbid consumption of soy as such, the complaint alleges that Pendleton experiences vomiting, abdominal pain, constipation, and other digestive issues when he does so. And this, the complaint asserts, is of "religious significance" to Pendleton because his inability to properly digest soy renders such foods "Haram" for him. JA 40.

Pendleton also plausibly alleges that the defendants' refusal to provide any other dietary options imposes a substantial burden on those beliefs. "[I]n its most elemental form," RLUIPA provides an incarcerated person with the "right to a diet consistent with his . . . religious scruples.'" *Lovelace*, 472 F.3d at 198–99 (quotation marks removed); accord *Carter v. Fleming*, 879 F.3d 132, 140 (4th Cir. 2018) (RLUIPA implicated where prison-provided diet "prevented" an inmate plaintiff "from complying with his religion's dietary requirements"). But, according to the complaint, Pendleton "cannot maintain an adequate diet" because the defendants refuse to give him "a substitute" for the regular diet's meat or the religious diet's soy, both of which his religious beliefs forbid him from consuming. JA 73. Indeed, Pendleton alleges that he currently consumes—at most—about 60% of the calories per day that are available to other prisoners.

The rock against which Pendleton says the defendants have put him, then, is the prospect of going without adequate food. That predicament is even more severe than the substantial burden of choosing between government benefits and religious convictions. See *Lovelace*, 472 F.3d at 187. Food is not a government "benefit" from which Pendleton could choose to abstain. Because "society" has "take[n] from" Pendleton "the means to provide for [his] own needs," he is "dependent on the" defendants "for food." *Brown v. Plata*, 563 U.S. 493, 510 (2011).

8

The defendants say none of this matters because Pendleton does not allege that "returning to the regular diet and avoiding meat would leave him malnourished." Defs. Br. 25. But neither Rule 8 nor RLUIPA requires a plaintiff—much less a pro se prisoner— to incant magic words to adequately state a claim. Pendleton asserts that the current circumstances leave him without "adequate nutrition" (JA 58), and that assertion is plausible. See, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pendleton alleges that the religious special diet uses soy as a protein source "95% of the time" and that meat is served with most (if not all) meals for the regular diet. JA 67, 70–71. It is more than plausible that subtracting a major component from a diet designed to be nutritionally sound would render that diet no longer nutritionally sound.

Alternatively, the defendants suggest that Pendleton's RLUIPA claim fails as a matter of law because he could get nutritionally complete meals by avoiding the items to which he has religious objections and then supplementing his diet by purchasing items from the prison commissary. We firmly reject that notion.

To be sure, "RLUIPA does not require a State to pay for an inmate's devotional accessories" like holy books or prayer oils. *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005). But food is no accessory, and providing a religiously compliant diet is not optional. Our sister circuits have repeatedly rejected claims that prison officials may escape liability under RLUIPA because a plaintiff could, in theory, replace or supplement religiously noncompliant meals through commissary purchases. See, *e.g.*, *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019) ("[W]hen the state forces a prisoner to give away his last dime so that his daily meals will not violate his religious practice, it is imposing a substantial

9

burden."); *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 794 (5th. Cir. 2012) ("Every prisoner [] receives a nutritionally sufficient diet. . . . [Plaintiff] is denied that benefit, because he is forced to pay for his [compliant] meals. This practice substantially burdens his ability to exercise his religious beliefs."). We reject any such argument as well.

Finally, the defendants insist that Pendleton could obtain a meat-free and soy-free diet by obtaining test results showing he has a medically significant allergy to soy. And, the defendants continue, because Pendleton has refused to submit to allergy testing and because the medical testing that has been done suggests he does not have a soy allergy, he has not plausibly alleged a substantial burden on his religious practice.

That argument fails too. Pendleton need not produce documentation of his alleged soy allergy to survive a motion to dismiss. Instead, it is enough that he has plausibly alleged that he cannot digest soy and that he suffered gastrointestinal distress after switching to the religious special diet. More to the point, Pendleton does not assert he is religiously forbidden only from eating foods to which he is allergic in a medical sense. Instead, Pendleton claims that his religion requires him to avoid foods that he has trouble digesting *regardless of whether* any resulting distress is medically significant or would be enough for a doctor to tell him he should avoid soy for health reasons. Even if Pendleton took an allergy test and that test was negative, it would not eliminate his religiously based objections to eating soy.[2] For that reason, Pendleton has plausibly alleged a substantial

---

[2] In truth, the defendants' willingness to provide a soy-free diet to inmates with allergies makes the problem worse, not better. Saying Pendleton's religiously based objections to eating soy will be accommodated only if he takes an allergy test is no more acceptable than telling religiously observant Jewish inmates they will be served shrimp

burden on his religious practices, and the district court erred in concluding otherwise.

B.

Our conclusion that the district court erred in dismissing Pendleton's RLUIPA claim resolves the other two issues in this appeal as well. As the defendants conceded at oral argument, the district court's rejection of Pendleton's Free Exercise Clause claim was based solely on its conclusion that Pendleton failed to establish a substantial burden for purposes of his RLUIPA claim. See Oral Arg. 27:41–28:40. So too with the district court's denial of Pendleton's request for injunctive relief, which relied on the court's conclusion that Pendleton's "complaint does not plausibly state any violation of" his constitutional or statutory rights. JA 108.

Before this Court, the defendants offer several reasons why Pendleton's Free Exercise Clause claim and his motion to be severed from the prison's diet program may ultimately fail. Although we have the power to consider those alternative arguments for affirmance, we remain "mindful that we are a court of review, not of first view." *Cutter*, 544 U.S. at 718 n.7. We thus vacate the district court's dismissal of Pendleton's Free Exercise Clause claim and its denial of his motion to sever and remand for further proceedings, including consideration of any renewed motions for injunctive relief that Pendleton may file.

\*    \*    \*

---

unless they can produce evidence of a shellfish allergy. See, *e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 367–68 (2015) (prison policy allowing beards for medical reasons but not for solely religious ones violated RLUIPA).

11

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*