**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1393**

———————

FAMILY HEALTH PHYSICAL MEDICINE, LLC, an Ohio limited liability company, individually and as the representative of a class of similarly-situated persons,

        Plaintiff – Appellant,

v.

PULSE8, LLC, a Maryland limited liability company; PULSE8, INC., a Maryland corporation,

        Defendants – Appellees.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:21-cv-02095-SAG)

———————

Argued: May 10, 2024                        Decided: June 21, 2024

———————

Before KING, AGEE, and HEYTENS, Circuit Judges.

———————

Reversed and remanded by published opinion. Judge Heytens wrote the opinion, which Judge King joined. Judge Agee wrote an opinion concurring in part and dissenting in part.

———————

**ARGUED:** Glenn Lorne Hara, ANDERSON & WANCA, Rolling Meadows, Illinois, for Appellant. Amy R. Upshaw, KING & SPALDING LLP, Chicago, Illinois, for Appellees. **ON BRIEF:** Stephen H. Ring, LAW OFFICES OF STEPHEN H. RING, P.C., Rockville, Maryland, for Appellant. Livia M. Kiser, Chicago, Illinois, Marisa C. Maleck, KING & SPALDING LLP, Washington, D.C., for Appellees.

———————

TOBY HEYTENS, Circuit Judge:

With some exceptions not applicable here, a federal statute forbids using "any . . . device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The question before us is whether a complaint plausibly alleged that a fax which was sent by a company that sells a product containing medical coding technology and invited recipients to attend a free webinar where that sort of coding would be promoted was a covered advertisement. Concluding the answer is yes, we reverse and remand for further proceedings.

I.

Pulse8, LLC is a "Healthcare Analytics and Technology Company." JA 9.[1] The company sells a "platform" to "health-plans and at-risk providers" that Pulse8 says will help those providers "achieve the greatest financial impact in the ACA Commercial, Medicare Advantage, and Medicaid markets." *Id.* The "[p]latform includes," among other things, "Coding Technology." *Id.*

In 2020, Pulse8 sent Family Health Physical Medicine LLC a fax inviting it to attend a free webinar. The fax encouraged recipients to "Open your Mind to Behavioral Health Coding" and "Expand your knowledge by learning how to successfully document and code conditions that are due to substance abuse, major depression, schizophrenia, bipolar, and other mental health disorders." JA 20. The fax included a link to register at

---

[1] The complaint also names as a defendant another entity we are told "no longer exists." Pulse8 Br. i n.1. Because the complaint alleges that both defendants were independently responsible for sending the relevant fax, any difference between the two is immaterial to this appeal.

2

"https://pulse8.zoom.us" and directed questions to "providerengagement@pulse8.com." *Id.* It also offered recipients "a chance to win a $25 Amazon gift card" by "[c]omplet[ing] the webinar survey." *Id.*

Just over a year later, Family Health filed this suit. As relevant here, the complaint alleged the fax was an unsolicited advertisement and thus violated the federal Telephone Consumer Protection Act (TCPA). Pulse8 moved to dismiss for failure to state a claim, arguing the fax did not qualify as an advertisement under the TCPA because the webinar was free. The district court granted the motion.

We placed Family Health's appeal in abeyance pending this Court's resolution of a different appeal that also involved the proper interpretation of "unsolicited advertisement" in the TCPA. See *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC* (*PDR*), 80 F.4th 466, 470 (4th Cir. 2023). After that case was decided, this one was returned to the argument calendar.

## II.

Family Health's complaint pressed four theories for why Pulse8's fax satisfied the statutory definition of "unsolicited advertisement"—specifically, why the fax constituted "material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). The district court concluded each set of allegations failed as a matter of law. We review that decision "de novo, applying the same standards as the district court." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024).

## A.

As Family Health conceded at oral argument, *PDR* forecloses the complaint's first

3

theory of liability. *PDR* holds that the TCPA's definition of "unsolicited advertisement" "does not include offers or solicitations with no commercial component or purpose" and that, as a result, merely "promot[ing] the quality of a free good or service" is not enough to make something an advertisement. 80 F.4th at 474–75 (quotation marks removed). For that reason, that the fax "ma[de] known" and "call[ed] public attention" to the free webinar did not, standing alone, make it an advertisement. Family Health Br. 8–9 (quotation marks removed).

## B.

We reach a different conclusion about the complaint's second theory. The complaint also alleged that the fax was an advertisement because it promoted a webinar that "relate[d] to [Pulse8's] for-profit business"—selling software containing medical coding technology. JA 10; see also JA 7, 9. In other words, the complaint alleged that the webinar was being used to market Pulse8's product. See *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint survives a motion to dismiss, a court evaluates the complaint in its entirety[.]"). We conclude Family Health has plausibly alleged the fax was an advertisement under this theory.[2]

*PDR* makes clear that a fax need not "propose a specific commercial transaction on its face" to be covered by the TCPA. 80 F.4th at 476 (quotation marks removed). Instead,

---

[2] We disagree with Pulse8's suggestion that Family Health forfeited this argument by failing to develop it in its opening brief. Family Health argued that the "subject of the webinar . . . relate[d] to Pulse8's commercially available Coding Technology" and spent pages explaining why that relationship meant the fax should "be presumed to at least plausibly be an advertisement at the pleading stage." Family Health Br. 6, 21 (quotation marks removed). That is enough to preserve the issue for our review.

4

the most natural "understanding of the term advertise" means transmitting "information with a commercial nexus to the sender's business." 80 F.4th at 472–73 (quotation marks removed). To qualify as an "advertisement" under the TCPA, then, "there must be a commercial component" to the fax "or a commercial nexus" between the fax and "the sender's business—its property, products, or services." *Id.* at 474 (quotation marks removed).

Family Health plausibly alleged such a connection here. *PDR* explained that "[a]cceptance of a free good or service" can be "leveraged into an opportunity for a sales pitch," thereby giving the offer of a free good or service the requisite "commercial component." 80 F.4th at 474 (third quote), 478–79 (first and second quotes). Pulse8 thus misreads *PDR* as holding that a fax which offers something for free is commercial *only* if "there is a 'direct mechanism by which the sender will profit if the offer is accepted.'" Pulse8 Suppl. Br. 1. To the contrary, *PDR* identified "the fax at issue in" *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 847 F.3d 92 (2d Cir. 2017)—one that invited recipients to "a free dinner meeting" (*id.* at 93)—as the "prototypical . . . example" of one kind of covered advertisement. *PDR*, 80 F.4th at 478.

If *Boehringer* provides the prototypical example, this case falls comfortably within its rule. As in *Boehringer*, Family Health's complaint alleged that Pulse8 is "in the business," 847 F.3d at 97, of providing coding technology to be used by "providers" in managing their billing. JA 9. As in *Boehringer*, the complaint alleged that the webinar was about a "subject related to" Pulse8's "business," 847 F.3d at 93—"how to successfully document and code" certain health "conditions." JA 10. And, as in *Boehringer*, it is

5

reasonable to draw the inference in Family Health's favor—as we must at this stage—that Pulse8 sent the fax "hop[ing] to persuade" recipients to use Pulse8's products. 847 F.3d at 97. For that reason, we conclude that Family Health sufficiently "alleged that [Pulse8's] fax advertised a free seminar relating to its business" (*id.*), which gives the fax "the commercial nexus necessary to qualify as [an] advertisement," *PDR*, 80 F.4th at 478 (quotation marks removed).

Echoing the district court, Pulse8 faults Family Health for failing to allege anything about what happened at the webinar that it declined to attend. But *Boehringer* addressed that argument too. Like the Second Circuit, we conclude that Family Health did not need to "plead specific facts alleging that specific products or services would be, or were, promoted at the free" webinar to survive a motion to dismiss for failure to state a claim. *Boehringer*, 847 F.3d at 96. Rather, it is reasonable to "infer[]" that a company that invites you to a free webinar on a "subject . . . relate[d] to [its] business" intends to promote its products during that event. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (first quote); *Boehringer*, 847 F.3d at 96 (second quote).

We also disagree with the suggestion that the complaint is deficient because it included no allegations about Pulse8's "overarching motive or purpose" in sending the fax. Oral Arg. 30:30–30:50. Unlike neighboring sections of the same statute, the TCPA's definition of "unsolicited advertisement" makes no "reference to the sender's purpose." *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023). That is why, as *PDR* explained, a sender's "profit motive alone" is not enough to give a fax "the requisite commercial character." 80 F.4th at 476. Instead, the inquiry turns

6

on *objective* facts: the content of the fax and its "commercial nexus" with the sender's business. *Id.*

We recognize that the Seventh Circuit rejected a claim that looks something like the one before us, but we see no necessary conflict between that decision and ours. In *Ambassador Animal Hospital, Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829 (7th Cir. 2023), the Seventh Circuit concluded that a fax sent by "an animal health products and services company" to "veterinarians" inviting them to "free dinner programs" about animal health conditions did "not indicate . . . to a reasonable recipient that" the sender "was promoting or selling some, good, service, or property." *Id.* at 830. But the test the Seventh Circuit announced in that case is consistent with the one this Court adopted in *PDR* and that we apply here: does "the fax itself . . . indicate—directly or indirectly—to a reasonable recipient that the sender is promoting or selling some good, service, or property"? *Id.* at 832. True, the Seventh Circuit concluded that the fax at issue in *Ambassador Animal Hospital* did not satisfy that test. See *id.* But the court acknowledged that "there could be situations in which a similar fax message would qualify as an indirect advertisement." *Id.* We think this is one such situation.

For its part, Pulse8 tries to walk a tightrope by arguing that *this* fax was not an advertisement while conceding that others resembling it would be advertisements. Imagine a fax from a car dealership whose text reads: "Come take a free test drive today." The text is laid over a photo of an open road on a sunny day, and the dealership's name and logo are at the bottom. There is no car in the image, no prices—nothing else at all. The dealership does not sell test drives, nor does it necessarily profit if the fax's recipient takes it up on

7

the offer of a free test drive.

But all agree—including Pulse8—that this hypothetical fax would be a covered advertisement. As Pulse8's counsel put it, "advertisements are clever," and any reasonable reader knows that the car dealership is hoping you come take the test drive so it can show you how great that new car is and get you to drive it home. Oral Arg. 19:20–19:25. That hypothetical fax, however, is a lot like the one Pulse8 sent. And although a fully developed record might show the webinar was not promoting Pulse8's products in any way, at this stage Family Health is entitled to the plausible inference that Pulse8—a company in the business of providing "Coding Technology"—was using a free webinar about "Behavioral Health Coding" to demonstrate just how useful its own coding technology can be. JA 9–10.

Undeterred, Pulse8 insists that this situation falls outside the TCPA because its fax did not, on its face, tell recipients that Pulse8 sells a product containing coding technology. But the same could be true of the hypothetical fax sent by the car dealership, and here, as in that example, we need not "blind[ ]" ourselves to the nature of Pulse8's business. *Boehringer*, 847 F.3d at 97. Indeed, doing so would depart from this Court's previous treatment of similar matters. In *PDR*, for example, the fax's "commercial character" stemmed from the fact that every time a recipient accepted an offer of a free e-book, the sender received money from a third party that placed advertisements in the book. 80 F.4th at 476–77. The Court never asked if that financial arrangement was mentioned in the fax itself (and it seems clear it was not). See *id.* at 470–71 (describing the fax). Instead, it was enough that the plaintiff—which seemingly had looked beyond the face of the fax to

8

understand the nature of the sender's business—alleged in its complaint that the sender "earned a commission." *Id.* at 472. So too here. That Family Health apparently went to Pulse8's website to understand how Pulse8 describes its own business in no way diminishes the fax's commercial character.

Finally, we reject Pulse8's late-breaking suggestion that we should adopt its preferred reading of the statute because considering the nature of a sender's business when deciding whether an unsolicited fax is a covered advertisement raises "grave First Amendment concerns." Pulse8 Suppl. Br. 4–5. As Pulse8 admits, the TCPA's exclusive focus on commercial speech means that the statute elicits fewer constitutional concerns than it would if it covered non-commercial speech as well, and identifying commercial speech always requires considering "the economic interests of the speaker." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980). For that reason, considering *who* is sending a particular fax—a business that sells a product related to the subject of the ostensibly "free" service or a person or entity with no direct economic interests at stake—does not create First Amendment concerns. It helps avoid them.[3]

## C.

The complaint's third theory of liability was that the fax was an "advertisement"

---

[3] At oral argument Pulse8 also suggested the fax was not an advertisement because it said the webinar was "AAPC CEU approved"—meaning it was approved as a continuing education course by a professional organization—and because Pulse8 only sells its technology to "risk-bearing entities," not doctor's offices. See Oral Arg. 20:40–21:00; 22:00–22:36. We will not consider "newly minted argument[s], made for the first time at oral argument." *United States v. Clay*, 627 F.3d 959, 966 n.2 (4th Cir. 2010). We also note these arguments do not explain why the fax contains an email address devoted to *provider* engagement. JA 20.

because Family Health could not accept Pulse8's offer to attend the webinar without providing its contact information and consenting to receiving further promotional materials. We conclude these allegations also asserted a plausible theory for relief.

Much of what we have already said applies with equal force here. According to the complaint, "[a]cceptance of" the invitation to the free webinar was "leveraged into an opportunity for a sales pitch" in future promotional messages. *PDR*, 80 F.4th at 479. This familiar marketing tactic gave the fax the requisite "commercial nexus" to Pulse8's business to survive a motion to dismiss. *Id.* at 478.

This situation is different from *PDR*, where the plaintiff failed in making a similar argument. In *PDR*, the complaint alleged that a fax was a covered advertisement in part because the sender "would continue" sending "faxes about healthcare products" going forward. 80 F.4th at 472 (quotation marks removed). The Court concluded the complaint could not survive a motion to dismiss on such a theory because—according to the plaintiff's own allegations—the sender would keep sending faxes "*regardless of whether* [the plaintiff] accept[ed] the free eBook" being offered in the initial fax. *Id.* at 479 (emphasis added). In those circumstances, the Court explained, the initial fax had "nothing to do with" whether the plaintiff would receive future advertisements. *Id.* Here, by contrast, Family Health says that its acceptance of Pulse8's offer to attend the free webinar mentioned in the initial fax is the very thing that would trigger future advertising. For that reason—and unlike in *PDR*—Family Health's complaint asserted that acceptance of the "free offer" has everything "to do with the future sales promotions." *Id.*

Our decision on this point accords with one from the Sixth Circuit holding that

10

similar allegations plausibly alleged a violation of the TCPA. In *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882 (6th Cir. 2020), the plaintiff received a fax asking it to "validate" or "update" its "contact information" on a "database of medical provider business[es]." *Id.* at 885–86. The Sixth Circuit held the plaintiff had plausibly alleged the fax was a covered advertisement, and that court's reasoning was the same as ours: because the recipient's decision to provide its contact information would "pave[ ] the way" to it being sent "additional marketing materials." *Id.* at 885 (second quote), 890 (first quote).

### D.

The complaint's final theory was that the fax was an advertisement because it offered Family Health the "chance to win a gift card in exchange for" completing a survey. Family Health Br. 11. Pulse8 says Family Health forfeited this argument by merely taking a "passing shot" at it in its opening brief. Pulse8 Br. 26. "[W]e need not decide" if Pulse8 is right about that, because "[e]ven if we assume that [Family Health] preserved the argument . . . it fails." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014).

Return one last time to the statutory text: To be covered, a fax must "advertis[e] the commercial availability or quality of any *property, goods, or services*." 47 U.S.C. § 227(a)(5) (emphasis added). Family Health does not assert that the gift card the fax offered is "property" or a "good" whose availability Pulse8 was advertising. Nor did the complaint allege that the survey was a disguised sales tool whose completion Pulse8 used to pitch products or collect data for future advertising. Instead, Family Health says the chance to win a gift card made the fax a covered advertisement because it "offer[ed]

11

[Family Health] the opportunity to sell" its own "participation in" the Pulse8-provided webinar. Family Health Br. 12 (quotation marks removed). On this view, Pulse8 was operating somewhat like a pawn shop—offering recipients the chance to exchange one thing (their time in completing a survey) for another (a chance to win an Amazon gift card).

But Family Health does not allege that Pulse8 is in the business of selling Amazon gift cards or buying survey data. The complaint says Pulse8 is a "Healthcare Analytics and Technology Company." JA 9. Perhaps there are businesses whose offers to buy something amount to the advertisement of a service. (To continue with the previous example: a pawn shop might be seen as selling the service of exchanging personal property for cash.). But Pulse8 is not one of those businesses. Nor has Family Health alleged that Pulse8 is in the business of conducting market research surveys, which means we need not decide whether a company of that kind is advertising when it sends a fax offering to pay for survey participation. Compare *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020) (concluding that such a fax is an advertisement), with *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 370 (2d Cir. 2022) (not an advertisement). We thus hold that Pulse8's offer of the chance to win a gift card was not enough, by itself, to make this fax one that "advertis[ed] the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5).

\*      \*      \*

"[T]his litigation remains in its early stages," and Family Health's allegations may not ultimately "be borne out by discovery." *PDR*, 80 F.4th at 478; see *Robert W. Mauthe MD PC v. Millenium Health LLC*, 58 F.4th 93, 94, 96–97 (3d Cir. 2023) (per curiam)

12

(affirming a grant of summary judgment for the defendant where the evidence revealed that a free seminar promoted in a fax did not promote any good, services, or property). But the complaint plausibly alleged that Pulse8's fax was an unsolicited advertisement, which was all that is required to survive a motion to dismiss. The district court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

AGEE, Circuit Judge, concurring in part and dissenting in part:

I agree that the complaint's first and fourth theories of liability fail to state a claim and so concur in the majority opinion's disposition of those theories. With respect, however, I believe that the complaint's second and third theories also fail to state a claim. In concluding otherwise, the majority effectively adopts a "pretext" theory of liability for this circuit. That is an erroneous decision in my view. As other jurists have explained, the pretext theory impermissibly expands the meaning of "unsolicited advertisement" as defined by the TCPA, providing a cause of action to nearly every recipient of a fax from a for-profit entity, regardless of the content of the fax itself. I disagree with this result because it rewrites what Congress said in the statute. Therefore, I respectfully dissent from the majority opinion as to its conclusions on the second and third theories.

The TCPA prohibits a person or entity from sending an "unsolicited advertisement" to a telephone facsimile machine without the recipient's prior express invitation or consent, among other conditions. 47 U.S.C. § 227(b)(1)(C). The Act defines "unsolicited advertisement" in relevant part as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person." *Id.* § 227(a)(5).

As this plain language demonstrates, "the TCPA creates an objective standard narrowly focused on the content of the faxed document": "to be an unsolicited advertisement under the TCPA, *the fax itself* must indicate—directly or indirectly—to a reasonable recipient that the sender is promoting or selling some good, service, or property." *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829,

14

832–33 (7th Cir. 2023) (emphasis added); *see also Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 96 (3rd Cir. 2023) (per curiam) ("[A]n objective standard governs whether a fax constitutes an unsolicited advertisement."); *id.* at 103 (Phipps, J., concurring) ("[T]he TCPA confines the meaning of the term 'unsolicited advertisement' to the *material transmitted*[.]"); *BPP v. CaremarkPCS Health, L.L.C.*, 53 F.4th 1109, 1113 (8th Cir. 2022) (stating that the TCPA's focus is on whether the "fax would be *plainly understood* as promoting a commercial good or service" (emphasis added)).

The problem with the pretext theory—and the majority opinion—is that it "involves consideration of facts extrinsic to the fax itself" and thus cannot be squared with the TCPA's express text. *Millennium Health*, 58 F.4th at 103 (Phipps, J., concurring).

As explained by this Court in *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC* (*PDR*), under the pretext theory, a fax constitutes an "unsolicited advertisement" if it can plausibly be alleged to be a "'pretext' to *future* advertising"—that is, "[a] fax that offers a good or service that is free but will be used, once accepted, to promote goods or services at a cost." 80 F.4th 466, 478 (4th Cir. 2023) (emphasis added) (citation omitted); *see also id.* at 478–79 (stating that the "basic idea" of the pretext theory is that "[a]cceptance of a free good or service is leveraged into an opportunity for a [future] sales pitch, giving the free fax offer a 'commercial pretext'" (quoting *Physicians Healthsource, Inc. v.*

15

*Boehringer Ingelheim Pharms., Inc.* (*Boehringer*), 847 F.3d 92, 95 (2d Cir. 2017))).[1] But to determine whether a complaint plausibly alleges that a fax is a pretext to *future* advertising, a court is necessarily required to look beyond the fax itself to the "subjective motivations" of the sender in transmitting the fax as well as its "subsequent conduct." *Ambassador Animal Hosp.*, 74 F.4th at 833.[2]

And therein lies the rub. By "depend[ing] on facts beyond those contained in the fax," the pretext theory improperly "expand[s] the meaning of the term 'unsolicited advertisement'" under the TCPA, with no limiting principle in sight. *Millennium Health*, 58 F.4th at 104 (Phipps, J., concurring). Indeed, "in almost all cases, a recipient of a fax could argue under the pretext theory that a fax from a commercial entity is an advertisement." *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 250 (3d Cir. 2019). Such a result, however, "would extend [the] TCPA's prohibition too far." *Id.*

Because the pretext theory rests on an understanding of the term "unsolicited advertisement" that is "[un]tethered . . . to the text of the fax itself," it "cannot be reconciled with the TCPA, which defines that term in reference to only *the material transmitted*."

---

[1] Although the *PDR* panel stated that it had "no reason to doubt the legal viability of [the] pretext theory," the Court expressly stopped short of adopting it. 80 F.4th at 479. As illustrated herein, today's majority opinion finishes the job.

[2] Indeed, that is precisely what other courts that have adopted the pretext theory have done. *See, e.g.*, *Boehringer*, 847 F.3d at 95–97 (holding that a complaint sufficiently pled that a fax promoting a free dinner seminar "discussing a subject that relates to the" sender's business constituted an "unsolicited advertisement" because the sender "would *presumably hope to persuade* [the recipient doctor] to prescribe [the sender's pharmaceutical] drugs to patients," and stating that the sender could rebut this inference after discovery "by showing that it did not or would not advertise its products or services *at the seminar*" (emphases added)).

16

*Millennium Health*, 58 F.4th at 103–04 (Phipps, J., concurring) (emphasis added); *cf.*

*Ambassador Animal Hosp.*, 74 F.4th at 831 ("Section 227 asks whether *the content of a fax*

advertises the commercial availability or quality of a thing. It does not inquire of the seller's

motivation for sending the fax or the seller's subsequent actions." (emphasis added)

(citation omitted)); *Millennium Health*, 58 F.4th at 96 ("The statutory definition of the term

'unsolicited advertisement' does not depend on the subjective viewpoints of either the fax

sender or recipient."). Accordingly, any court that applies the pretext theory, in my view,

misapplies the law.

That is why I cannot join my colleagues in the majority in upholding the complaint's

second and third theories of liability, both of which are premised on the pretext theory.

True, the majority opinion never expressly employs the term "pretext theory," but

it is evident that its holding fully embraces that atextual scheme. Indeed, in upholding the

complaint's second and third theories, the majority opinion consistently invokes—

seemingly as binding—*PDR*'s dicta concerning the pretext theory. *Compare ante* at 5

("*PDR* explained that '[a]cceptance of a free good or service' can be 'leveraged into an

opportunity for a sales pitch,' thereby giving the offer of a free good or service the requisite

'commercial component.'" (alteration in original) (quoting *PDR*, 80 F.4th at 474, 478–

79)), *and ante* at 5 ("*PDR* identified 'the fax at issue in' [*Boehringer*], 847 F.3d 92 (2d Cir.

2017)—one that invited recipients to 'a free dinner meeting' (*id.* at 93)—as the

'prototypical . . . example' of one kind of covered advertisement." (second alteration in

original) (quoting *PDR*, 80 F.4th at 478)), *with PDR*, 80 F.4th at 477–78 (making those

statements only while discussing, in dicta, the pretext theory).

17

And just as the pretext theory demands, the majority opinion assesses Family Health's TCPA claim by looking beyond the text of Pulse8's fax, even if it fails to acknowledge it.

For instance, without pointing to anything in the fax itself—the very thing that the TCPA regulates—the majority opinion declares that it is reasonable to infer "that Pulse8 sent the fax '*hop*[*ing*] *to persuade*' recipients to use Pulse8's products." *Ante* at 6 (alteration in original) (emphasis added); *accord ante* at 6 (stating that "it is reasonable to infer that a company that invites you to a free webinar on a subject related to its business *intends to promote its products during that event*" (emphasis added) (cleaned up)). The majority opinion thus focuses on the inferred subjective motivation of Pulse8 in transmitting the fax, even though § 227 disregards any such intent. *See Ambassador Animal Hosp.*, 74 F.4th at 831 (finding "particularly significant" "[t]he absence of any reference to the sender's purpose in § 227" given that "the TCPA expressly considers a sender's purpose in other provisions").[3]

The majority opinion then features another hallmark of the pretext theory by "assum[ing] that [Pulse8's] subsequent conduct . . . is relevant to the TCPA analysis." *Id.* at 833. The majority opinion suggests that Pulse8 may not be liable under the TCPA if "a fully developed record [shows] the webinar was not promoting Pulse8's products in any way." *Ante* at 8. But as explained above, a sender's subsequent conduct is totally extrinsic

---

[3] Significantly, the majority opinion acknowledges that § 227 "makes no reference to the sender's purpose." *Ante* at 6 (cleaned up). Yet that recognition does not prevent it from considering that extrinsic factor all the same.

to the TCPA's sole focus—the "material . . . which is transmitted," *i.e.*, the fax. 47 U.S.C. § 227(a)(5).

And for reasons not apparent to me, the majority opinion further claims that there is "no necessary conflict between" its holding and the Seventh Circuit's decision in *Ambassador Animal Hospital*. *Ante* at 7. To the contrary, there is clear conflict.

In short, the Seventh Circuit applied the correct statutory standard: "the fax itself must indicate—directly or indirectly—to a reasonable recipient that the sender is promoting or selling some good, service, or property. In other words, the 'material . . . which is transmitted'—the faxed document—must perform the advertising." *Ambassador Animal Hosp.*, 74 F.4th at 832. The majority opinion asserts that this test is "consistent with" the test that it applies today. *Ante* at 7. Respectfully, that's incorrect. Unlike the majority opinion, *Ambassador Animal Hospital* expressly "decline[d] to manufacture a pretext element unsupported by the TCPA's text." 74 F.4th at 833. Unlike the majority opinion, *Ambassador Animal Hospital* did not "assume subjective motivations behind faxes that advertise no goods or services" or "assume that subsequent conduct of senders is relevant to the TCPA analysis." *Id.* And unlike the majority opinion, *Ambassador Animal Hospital* applied "an *objective* standard narrowly focused on *the content of the faxed document*." *Id.* (emphases added). In light of these material differences, *Ambassador Animal Hospital* simply cannot be harmonized with the majority opinion.

Without the statutorily unsupported pretext theory as a crutch, the complaint's second and third theories have no legs to stand on. The fax at issue advertises a free webinar titled "Open your Mind to Behavioral Health Coding." J.A. 20. In its entirety, the main text

19

of the fax states: "Expand your knowledge by learning how to successfully document and code conditions that are due to substance abuse, major depression, schizophrenia, bipolar, and other mental health disorders." J.A. 20. The top right corner of the fax includes a notation that the webinar is an approved continuing education course for a professional organization, while the bottom right corner displays Pulse8's logo. Nothing on the face of the fax indicates—directly or indirectly—that Pulse8 is advertising a good or service for sale. Indeed, nothing in the fax communicates to the recipient that Pulse8 offers *anything* for sale or otherwise engages in a particular line of business.

But even accepting, as the complaint alleges, that Pulse8 is in the coding technology business, simply offering a free webinar "related to" its business, *ante* at 5, is not enough to expose the company to liability under the TCPA. Indeed, *Ambassador Animal Hospital* rejected the same theory when confronting a fax materially similar to the one here:

> Ambassador argues that Elanco's faxes did, in fact, contain advertising content. Namely, Ambassador emphasizes that Elanco included its name and logo on the faxes, the seminar topics related to products sold by Elanco, and the invitations targeted recipients and requested RSVPs of particular employees. But none of these features transformed Elanco's invitations to free dinners and continuing education programs into advertisements for a good, service, or property. Use of Elanco's trademarked logo on the invitations did not reasonably encourage readers to buy any of Elanco's products or services. Nor did simply mentioning subject matter related to Elanco's business. The TCPA does not go so far as to prohibit sending faxes on company letterhead to promote free education on topics that relate to the sender's business—it prohibits advertising products or services. . . .

> The faxes certainly promoted goodwill for Elanco and helped the company manage its brand and image. And there could be situations in which a similar fax message would qualify as an indirect advertisement—perhaps if Elanco had said something like "Join us for a free dinner discussion of how Alenza [Elanco's product] can help manage canine inflammation" or "RSVP

20

for a free event hosted by Elanco on the best medication available for canine osteoarthritis." But not only did these faxes lack that promotional aspect, nothing in them directly or indirectly alluded to the commercial availability or the quality of Elanco's products, as the statutory definition requires.

74 F.4th at 832; *see also Millennium Health*, 58 F.4th at 96 (holding that "no reasonable recipient of [an] unsolicited free-seminar fax could view it as promoting the purchase or sale of goods, services, or property" where the fax included no "discussion of anything that can be bought or sold" but spoke only of a free "academic" seminar). This same logic applies with equal force here.

As the district court below succinctly observed, Pulse8's fax "offer[ed] recipients a free webinar and nothing more." *Fam. Health Physical Med., LLC v. Pulse8, LLC*, No. SAG-21-2095, 2022 WL 596475, at *5 (D. Md. Feb. 28, 2020). It lacked "direct[] or indirect[] allu[sion] to the commercial availability or the quality of [Pulse8's] products, as the statutory definition requires." *Ambassador Animal Hosp.*, 74 F.4th at 832. In those circumstances, Pulse8's fax simply does not give rise to liability under the TCPA.[4]

In sum, I find the majority opinion's holding on the complaint's second and third theories to be contrary to the plain text of the TCPA and without a limiting principle. Respectfully, therefore, I dissent from that holding and would affirm in full the district court's order dismissing Family Health's complaint.

---

[4] Although we said in *PDR* that a plaintiff states a claim under the TCPA when it plausibly alleges the existence of a "direct mechanism by which the sender will profit if the offer is accepted," 80 F.4th at 477, Family Health's complaint makes no such allegation here, a fact that even the majority appears to accept.

21